SIDENBERG *et al. v.* ROBERTSON.

*(Circuit Court, S. D. New York. February 21, 1890.)*

1. CUSTOMS DUTIES—CONSTRUCTION OF LAWS—TRADE USAGE.
   Where words used in a tariff act have acquired among importers and large dealers a meaning different from that which they have in ordinary speech, such trade meaning is to be adopted in the interpretation of the law.

2. SAME—CLASSIFICATION—SPECIFIC NAMES—EVIDENCE.
   To establish the fact that certain articles are not to be included under a general term used in the tariff which in its common acceptation is broad enough to include them, it is not sufficient to show that they are always bought and sold by certain specific names, and that the general term used in the tariff is not used in such commercial transactions; this must be supplemented by proof that the general term used in the tariff has in trade a restricted meaning, which would exclude the articles in controversy.

3. SAME—COTTON LACE—MADE-UP ARTICLES.
   Cotton lace, made-up articles, such as collars, cuffs, tidies, borders, parasol covers, etc., though always bought and sold under their specific names, are to be held dutiable as "cotton lace" at 40 per cent. *ad valorem,* under the provision therefore in Schedule I of the tariff act of March 3, 1883, and not as manufactures of cotton not specially enumerated or provided for, unless it is established by a preponderance of evidence to the satisfaction of the jury that the term "cotton laces" has in trade a special restricted meaning, which would exclude such articles.

4. SAME—EVIDENCE—BIAS OF WITNESSES.
   It is the right and duty of the jury in weighing the testimony to consider the extent to which witnesses are interested, pecuniarily or otherwise, in the result of the litigation.

*(Syllabus by the Court.)*

At Law. Action to recover duties.

In 1885 plaintiff imported a variety of cotton lace, made-up articles, comprising collars, cuffs, tidies, borders, parasol covers, etc. The collector assessed upon these goods a duty of 40 per cent. *ad valorem* under the provision in Schedule I of the tariff act of March 3, 1883, for "cotton laces." The importer protested, claiming that these articles were dutiable at 35 per cent. only, under the provision in the same act and schedule for "manufactures of cotton not otherwise provided for." This suit was brought to recover the 5 per cent. claimed to have been exacted in excess of the lawful rate. Upon the trial a number of witnesses called for plaintiffs testified that the term "cotton laces" in trade was restricted to laces which were bought and sold by the yard, and did not include made-up articles. · Witnesses for defendant testified that the term "cotton laces" in trade had no other or more restricted meaning than it had in common speech. The testimony in behalf of plaintiffs came largely from importers of goods similar to those in suit, who admitted on cross-examination that they were suing collectors to recover duties exacted in excess of 35 per cent. on such goods.

*Charles Currie* and *William Stanley*, for plaintiffs.

*Edward Mitchell*, U. S. Atty., and *W. Wickham Smith*, Asst. U. S. Atty., for defendant.

LACOMBE, J., (*charging jury.*) Prior to the passage of the tariff act of 1883, which lays the duty under which these goods were imported, the use to which they were put, and the perfection of manufacture which they had attained, adapting them to the use, was a very material question. There was a clause in the old tariff act providing a certain particular rate of duty on "clothing, ready made, and wearing apparel of every description, articles worn by men, women, or children, of whatever material composed," with certain exceptions. Of course, this catch-all clause comprised a great many articles which, except for that, would have been found elsewhere in the tariff act. In the act of 1883 that clause no longer exists. It has been dropped out of tariff legislation. The inclosure which it made around the particular group of articles which it designated has been broken down, and the articles which were once contained in it have gone back to the particular places where, except for that section, laying a duty upon them according to their use, they would have belonged. Therefore we gather no particular illumination in the determination of this case from decisions or discussions which were made, and had while the earlier act was in force, and by which, under such earlier act, these articles were classified as wearing apparel. Since the passage of the present act there have been several decisions rendered by the treasury department which you have heard read in evidence. They are not, of course, controlling on the court; and dealing, as they do, with such articles as chenille *portiere* curtains, Swiss mull, Turkish towels, and ladies' underwear embroidered in fancy patterns, they do not aid materially in the solution of the question of classification raised as to the articles now before us. This case, therefore, is in no material respect different from that of *Claflin* v. *Robertson*, 38 Fed. Rep. 92, tried in this

court in December, 1888, and I may charge you almost in the same language there used.

The clause under which the collector has classified these articles is paragraph 325, as follows: "Cotton laces, embroideries, insertings, trimmings, lace window-curtains, cotton damasks, hemmed handkerchiefs, and cotton velvet, forty per centum *ad valorem*." "Cotton laces" is the phrase in that clause by which, in the opinion of the collector and treasury department, these articles are described. Turning, now, to the dictionary, we find that the word "lace" is thus defined: "A fabric of fine threads of linen, silk, or cotton, interwoven in a net, and often ornamented with figures." Had we only the dictionary to refer to, therefore, the articles before us would come within the classification of "cotton laces;" that is, laces made of cotton. Your own experience of common speech would no doubt lead you to the same conclusion. There is in the Metropolitan Museum of Art in this city a very interesting collection of lace collars, lace flounces, lace fichus, lace handkerchiefs, and similar articles. These you would not yourselves be likely to refer to, except as a collection of laces, nor would you expect any one else to otherwise describe them. We are not, however, in these tariff acts, confined to the dictionary definition, nor to the usage of common speech, in determining the meaning of words used by congress. The tariff laws impose duties upon importations of goods. Their framers use language that importers would understand; and where things have names among importers which they have acquired by usage, different from what would be the ordinary names, (that is, the names as understood by ordinary individuals,) we are to take the trade names; that is, the names by which importers and large dealers know them. In order to bring this case under the application of that rule, the plaintiff has introduced testimony to the effect that these articles are bought and sold, and are known in the trade and commerce of this country, only by certain names, which I need not repeat to you, as you have heard the testimony. He has further examined his witnesses in order to bring out from them the fact that they are never bought, sold, or spoken of in the trade and commerce of this country as cotton laces. So far as the testimony is to the effect that these articles are always bought and sold as lace collars, tidies, borders, or what not, I do not know that there is much, if any, conflict of evidence between the witnesses. But you will, of course, understand that the plaintiff has to cover with his trade evidence both descriptions of words,—the words under which the laces are actually bought and sold, and also the word or words under which he claims that they are not known. Of course, if the particular word or phrase by which they were bought and sold were one of the phrases or words in the tariff act, as soon as he had proved that the articles were bought and sold, and known in commerce by that word or phrase, he would have proved his whole case. But where the particular word, the trade meaning of which he proves is not in the tariff act, and that instrument contains only general words, he must go further, and prove not merely that the articles are bought by one particular trade name, but that the general words used in the tariff act, which otherwise would cover them, do not

cover them in trade and commerce. To illustrate: "Linen," in the dictionary, is described as "thread or cloth made of flax or hemp." Now, from linen cloth are made hem-stitched pocket handkerchiefs. Testimony merely to the effect that these handkerchiefs were never bought and sold in the trade by any other name than "hem-stitched pocket handkerchiefs," and that they were never known in the trade as "linen," would not take these goods out of the class of linens, (if the general word "linens" was used in the tariff act,) unless it was also shown that the word "linens" had been modified in trade from its actual meaning, and was by the trade used solely in a restricted sense as covering only goods other than handkerchiefs. We may take another illustration: Wheat is a grain, and no amount of testimony that wheat was never bought and sold in trade by any other name than "winter wheat," that that was the only name which was used with regard to it, and that it was never known as "grain" in the trade, would take it out of the classification of "grains," unless it was also shown that the word "grain" had been distorted from its natural meaning, and was used by the trade in a restricted meaning, covering only cereals other than wheat. So, in the case before us, in order to take this class of goods which, as a "fabric of fine threads of cotton, interwoven in a net, and often ornamented with figures," is within the dictionary meaning of the words "cotton laces," out of that class, the plaintiff must satisfy you, by a fair preponderance of proof, that at the time this act was passed, (March 3, 1883,) and prior thereto, the words "cotton laces" had in the trade and commerce of this country (that is, in the trade and commerce carried on between importers and large dealers, in transactions at wholesale, transactions where the parties on both sides of the transaction were in the business) a peculiar or technical meaning, and that such technical trade meaning excluded these articles. If he satisfies you of that, he is entitled to recover; if he does not so satisfy you, then your verdict should be for the defendant. If you reach different conclusions as to the different articles, (and there are several kinds of them here,) you will find separately as to each. I have several requests from plaintiff and defendant, which I shall decline to charge in the language in which they are couched. I think that I have covered most, if not all, of them. There is one branch that I have not referred to, and that is that, in weighing the testimony which is introduced in the case, you are entitled to consider, and it is your duty to consider, the extent to which the witnesses are interested, pecuniarily or otherwise, (if any of them should be so interested,) in the result of the litigation. That is a circumstance which you may and should take into account in considering their testimony.

The jury found a verdict for the defendant.