### KLEEBERG v. UNITED STATES.

(Circuit Court, S. D. New York. February 20, 1896.)

No. 2,185.

CUSTOMS DUTIES—CLASSIFICATION—INSERTING.

"Insertions" or "inserting," of silk, are dutiable at 45 per cent. ad valorem, under paragraph 302 of the act of 1894, as "manufactures of silk, or of which silk is the component material of chief value, * * * not specially provided for in this act"; and not as "articles made wholly or in part of lace," under paragraph 301, which imposes a duty of 50 per cent. ad valorem.

This was an appeal by P. Kleeberg from a decision of the board of general appraisers overruling his protest and sustaining the classification of the collector of the merchandise in question, as "silk laces," under paragraph 301 of the act of 1894.

The paragraph above referred to is part of Schedule L—"Silks and Silk Goods"—and, so far as it relates to the present controversy, is as follows: "Laces and articles made wholly or in part of lace * * * composed of silk, or of which silk is the component material of chief value, and beaded silk goods, not specially provided for in this act, fifty per centum ad valorem." The importer protested insisting that the imported articles should have been classified under paragraph 302, which provides for "all manufactures of silk, or of which silk is the component material of chief value, * * * not specially pro-

vided for in this act. forty-five per centum ad valorem." The assistant appraiser on the 26th of October, 1894, reported that the merchandise in question "consists of silk inserlings similar to those covered by G. A. decision No. 2,723 and should have been returned at 45% ad valorem under Par. 302, N. T., in harmony therewith." Subsequently the deputy collector addressed to the appraiser the following question: "Are not the silk insertings referred to herein in fact articles made wholly or in part of silk lace?" To which the assistant appraiser answered: "Yes; they are articles made wholly or in part of silk lace." The board found as follows: "We find as matter of fact, from the report and return of the appraiser, and other papers in the case, that the goods in question consist of silk and cotton laces or articles made wholly or in part of lace." The dictionary definitions applicable are as follows: Webster (Internat. Dict.): "Lace. A fabric of fine threads of linen, silk, cotton, etc., often ornamented with figures; a delicate tissue of threads much worn as an ornament of dress." "Insertion or Inserting. That which is set in or inserted, especially a narrow strip of embroidered lace, muslin, or cambric." Stormonth: "Lace. A fine kind of net work texture or trimming." "Insertion or Inserting. A kind of lace trimming." Century: "Lace. A fabric of fine threads of linen, silk, or cotton, whether twisted or plaited together or worked like embroidery, or made by a combination of these processes, or by machinery." "Insertion or Inserting. A band of lace or other ornamental material inserted in a plain fabric for decorative purposes. Such bands are often made with both edges alike and with a certain amount of plain stuff on either side, to allow them to be sewed on strongly." No testimony was presented by the importer to the board. Eight witnesses have been examined in this court, and their testimony has been returned by the referee together with the testimony in the case of Lahey & Duncan, which is stipulated into the present record. It is probable that, if this testimony had been before the board, they would have reached a different conclusion, for the reason that in two subsequent cases they found with the importer on this issue, and this class of merchandise is now being passed at 45 per centum.

Stephen G. Clarke, for appellant.
Henry C. Platt, Asst. U. S. Atty.

COXE, District Judge (after stating the facts). The testimony taken in this court establishes the following facts: The articles in question are made at Nottingham, England, on a lace machine and are woven into a wide web with a draw thread between each piece; when the web is removed from the machine, dressed and dyed, the draw thread is pulled out leaving the articles in controversy. They are used as trimmings, and are known commercially as "insertings" or "insertions." So far there is no dispute. There is a difference of opinion as to whether they are lace or not, but the testimony of those most competent to speak on the subject—importers and large dealers —is to the effect that the term "lace" has a well-known commercial meaning and that "inserting" is not lace. "Lace," according to these witnesses, is an article having one scalloped edge and one straight edge; inserting has two straight edges and is thus commercially distinguished from lace. This designation differs from the dictionary definitions of lace, the latter clearly including the articles in controversy. But in tariff law the commercial meaning must take precedence.

Indeed, the proposition that these insertings are not laces was not seriously disputed at the argument, the principal contention being that they are "articles made wholly or in part of lace." The difficulty with this theory is clearly stated by the board in an opinion

filed about a fortnight after the decision of the case in hand. They say:

"We detect no force in the contention that insertings are articles 'made wholly or in part of lace.' It is not necessary to inquire what constitutes lace; that question has been passed upon by the courts. It is sufficient to observe that lace is a completed article or fabric made of threads, and that 'inserting' is also a completed article made of threads. As insertings are made of threads they are not 'articles made wholly or in part of lace,' because lace is not thread but a fabric composed of thread."

It is not perceived how the force of this reasoning can be avoided. Starting with the proposition that inserting is not lace, how can it be maintained that it is made of lace? How can a lace article be made without lace? If the mind be once clearly imbued with the idea that in tariff nomenclature "inserting" and "lace" are two totally distinct fabrics, it will follow as a necessary conclusion that lace articles can no more be made of insertings than of burlaps. The fact that lace would have been produced had the process of manufacture stopped at an earlier stage is not material. It did not stop there; it continued until inserting was produced. In order to make lace articles one must have lace to start with.

The decision of the board of general appraisers is reversed.