D. S. HESSE & BRO. v. UNITED STATES.

(Circuit Court, S. D. New York.  February 28, 1907.)

No. 4,210.

1. CUSTOMS DUTIES—CLASSIFICATION—LACE ARTICLES—BRAID COLLARS AND CUFFS.

The provision in Tariff Act July 24, 1897, c. 11, § 1, Schedule J, par. 339, 30 Stat. 181 [U. S. Comp. St. 1901, p. 1662], for articles of lace and of imitation lace, does not include women's collars and cuffs, composed of braids sewn together by hand and ornamented with threads and other material.

2. SAME—REAL LACE—IMITATION LACE.

The distinction between real lace and imitation lace is that the former is made by hand and the latter upon machines.

3. SAME—COMMERCIAL DESIGNATION—EVIDENCE BY RETAILERS.

The names given to articles by retailers puffing their wares, and by the women who buy them, do not control in the classification of merchandise under the tariff laws, and goods are not classifiable as lace simply because they are usually dealt in by the retail trade in this country as "lace" articles.

On Application for Review of a Decision of the Board of United States General Appraisers.

For decision below, see G. A. 6,283 (T. D. 27,086), which, on the authority of U. S. v. Van Blankensteyn (C. C.) 91 Fed. 977, affirmed the assessment of duty by the collector of customs at the port of New York.

Comstock & Washburn (Albert H. Washburn, of counsel), for importers.

D. Frank Lloyd, Asst. U. S. Atty.

HOUGH, District Judge.  The subjects of this appeal are collars and cuffs designed for feminine wearing apparel, composed of braids sewn together by hand and ornamented with threads and other material.  They have been assessed as "cotton lace articles," under paragraph 339 of the tariff act of 1897 (Act July 24, 1897, c. 11, § 1, Schedule J, 30 Stat. 181 [U. S. Comp. St. 1901, p. 1662]).  They were invoiced as "cotton braid ornaments," and the importers assert should have been classified as "manufactures of cotton," under paragraph 322.

The testimony which has prevailed before the Board of Appraisers is that these goods are known as "Renaissance collars," and that they have a "lacy" effect.  It is not pretended that they are of lace, nor that they are imitation lace.  The distinction between which terms seems to be that real lace must be made by hand, and imitation lace upon machines.  I conclude from the evidence introduced in this court that they are not "Renaissance collars," and that they are usually dealt in by retail in this country as "lace collars and cuffs"; but they are not so known among importers and foreign makers.  If any importance is to be given to the testimony that the wearing apparel under consideration has a "lacy" effect, it must be based upon the words "in imitation of lace," found in paragraph 339; but, as was remarked in G. A. 6,452 (T. D. 27,644), "there is no article known in any trade

as an imitation of lace. This is descriptive purely of a condition of an article." It seems to me that the effect upon the uneducated eye of something which is neither real nor imitation lace is far too unsubstantial to base a customs ruling upon. I think the question in Kleeberg v. United States (C. C.) 72 Fed. 252, 254, "How can a lace article be made without lace?" is unanswerable. These articles are not lace of any kind. To the eye of a person having any acquaintance with lace as defined by the dictionaries and recognized in Sidenberg v. Robertson (C. C.) 41 Fed. 763, these collars and cuffs do not in any way resemble lace.

The name given to them by retailers puffing their wares, and by the women who buy and use them, is not controlling; and therefore, because (1) the evidence clearly shows that the articles are not lace of any kind, and (2) the preponderance of testimony is that they are known as "braid collars" among importers, I think the decision of the General Appraisers must be reversed, and the protest sustained.