### STINER & SON et al. v. UNITED STATES (No. 1331).[1]

"ARTICLES" AND "LACES."

In the first proviso to paragraph 349, tariff act of 1909, there was no purpose to use the term "article" in the restricted sense of something completed. Field v. United States (73 Fed., 808). And the connection in which the term "laces" occurs indicates that laces were regarded and treated as articles—articles composed of material or goods specified in the paragraph—thus differentiating this case from Altman v. United States (5 Ct. Cust. Appls. 170; T. D. 34251). The aim was to bring within the higher rate the article which had the more expensive work done upon it.

### United States Court of Customs Appeals, April 28, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7509 (T. D. 33959), G. A. 7510 (T. D. 33960).

[Affirmed.]

*Brown & Gerry* for appellants.

*William L. Wemple,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES and MARTIN, Judges.

---

[1] Reported in T. D. 34428 (26 Treas. Dec., 736).

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This case again brings before the court for construction paragraphs 349 and 350 of the tariff act of 1909. The two paragraphs read as follows:

349. Laces, lace window curtains, and all other lace articles; handkerchiefs, napkins, wearing apparel, and all other articles made wholly or in part of lace or laces, or in imitation of lace; nets, nettings, veils, veilings, neck rufflings, ruchings, tuckings, flutings, quillings, embroideries, trimmings, braids, feather stitch braids, edgings, insertings, flouncings, galloons, gorings, bands, bandings, belts, beltings, bindings, cords, ornaments, ribbons, tapes, webs, and webbings; wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy letter, initial, or monogram, or otherwise, or tamboured, appliquéd, or scalloped; by hand or machinery, for any purpose, or from which threads have been drawn, cut, or punched to produce openwork, ornamented or embroidered in any manner herein described, in any part thereof, however small; hemstitched or tucked flouncings or skirtings; all of the foregoing, composed wholly or in chief value of cotton, flax, or other vegetable fiber, or of cotton, flax, or other vegetable fiber and india rubber, or of cotton, flax, or other vegetable fiber, india rubber, and metal, and not elsewhere specially provided for in this section, sixty per centum ad valorem: *Provided*, That no article composed wholly or in chief of value of one of more of the materials or goods specified in this paragraph, shall pay a less rate of duty than the highest rate imposed by this section upon any of the materials or goods or which the same is composed: *And provided further*, That no article or fabric of any description, composed of flax or other vegetable fiber, or of which these materials or any of them is the component material of chief value, when embroidered by hand or machinery, or having hand or machinery embroidery thereon, shall pay a less rate of duty than that imposed in this section upon any embroideries of the materials of which such embroidery is composed.

350. Laces, embroideries, edgings, insertings, galloons, flouncings, nets, nettings, trimmings, and veils, composed of cotton, silk, artificial silk, or other material (except wool), made on the Lever or Gothrough machine, seventy per centum ad valorem: *Provided*, That no wearing apparel, handkerchiefs, or articles of any description, composed wholly or in chief value of any of the foregoing, shall pay a less rate of duty than that imposed upon the articles or the materials of which the same are composed.

The importation consists of lace imported in continuous lengths, made up of lace made by sewing Lever edgings onto an embroidered net, Plauen lace, made by attaching pieces of embroidered Lever net to other pieces or embroidery or lace, and lace made by working a pattern with threads, by hand, upon a Lever net. In none of these laces is the Lever-made portion the component material of chief value. Duty was assessed on the merchandise at the rate of 70 per cent ad valorem, as provided by paragraph 350, by authority of the first proviso to paragraph 349.

It is conceded that within the holding of the court in Stein *v.* United States (2 Ct. Cust. Appls., 519; T. D. 32250) the articles in question would be dutiable at the rate fixed by paragraph 350 if the importation is to be treated as an article. But it is contended that the word "article" is used in this connection in a restricted sense. That the term "article" as employed in tariff statutes is broad enough to include lace in the piece is clearly established by the authorities.

See Junge *v.* Hedden (146 U. S., 233) and Stursberg, Schell & Co. *v.* United States (3 Ct. Cust. Appls., 370; T. D. 32963). Indeed this is not controverted by the importer, but it is said that the word "article" may and is often employed in a more narrow sense as relating to a completed article to the exclusion of more crude material. It is true that where the text discloses such a use of the term as to indicate an intended distinction, the narrower meaning has been attributed to the term, as in Salomon *v.* United States (2 Ct. Cust. Appls., 92; T. D. 31635), cited by counsel for appellant. We think, however, that evidence that the term was employed in this narrow sense is not afforded by the terms of the statute here in question. The question is much like that presented in the cases of United States *v.* McBratney (105 Fed., 767) and Schulemann *v.* United States (123 Fed., 1002), which two cases when read together strongly support the construction contended for by the Government.

The case of Field *v.* United States (73 Fed., 808) is more directly in point, as it arose under the paragraph of the act of 1890, corresponding to paragraph 349 of the act of 1909. The importation consisted of cotton muslin in the piece, 30 yards by 30 inches, having a hem on one side and a frill about 3 inches wide. It was said:

> The context of this particular provision must furnish the clue to the sense in which the word is employed in paragraph 373. The provision speaks of "laces, edgings, insertings, neck rufflings, ruches, tuckings, lace window curtains and other similar tamboured articles." These, it is stated, are imported in the piece and sold by the yard, although lace window curtains are also sold by the set. The correct interpretation of the language here employed includes tamboured articles similar to laces, edgings, etc., whether sold by the yard or as a completed article. The word "article," as employed in this particular clause, should therefore be construed in its general sense as indicating a commodity. Then follows the phrase, "articles embroidered by hand or machinery." We observe no reason to declare the word is here used in its restricted sense to indicate a completed article.

So the general scheme of the present paragraph being considered, a purpose to use the term "article" in the restricted sense is not to be attributed to Congress. The connection in which the term "laces" occurs indicates that laces were regarded and treated as articles, and they were articles composed of material or goods specified in the paragraph. This circumstance differentiates this case from that of Altman *v.* United States (5 Ct. Cust. Appls., 170; T. D. 34251). The paragraph makes provision for a great variety of articles, such as lace edgings and made-up articles of various kinds, and then, evidently with the purpose of avoiding the possibility of the importer escaping the rate fixed by paragraph 350 and possibly others, the first proviso was adopted. For this purpose it was just as essential to protect laces in the piece as more advanced articles. The aim manifestly was to bring within the higher rate the article which had the more expensive work expended upon it.

The decision of the board sustaining the action of the collector is *affirmed.*