TIEDEMAN & SONS *v.* UNITED STATES (No. 1757).[1]

1. CONSTRUCTION, PARAGRAPH 358, TARIFF ACT OF 1913—"VEILINGS."

The term "veilings" as used in the tariff act is a designation which signifies a material chiefly or exclusively used for the making of veils. A veil is a piece of cloth or other material, usually thin and light, designed to l·e worn over the head and face as an ornament or to protect or wholly or partly conceal the face from view. The textile material which is used to mask or screen the features resting beneath the face panels of caskets would be commonly and popularly regarded as veiling.

2. EVIDENCE, SUFFICIENCY OF—COMMERCIAL DESIGNATION.

Testimony that chiffon, having two closely woven stripes down the middle to serve as selvages when the fabric is split, is known commercially as "chiffon" or "slide chiffon" before being split and as "veiling" afterwards, is not sufficient to exclude the goods before being split from the commercial designation of veiling.

3. CASKET VEILING—"SLIDE CHIFFON."

Black, thin-woven silk chiffon, about 36 inches wide and 60 to 70 yards long, with two closely woven stripes down the middle to serve as selvages when the fabric is split, used after splitting to cover the face panels of burial caskets, is dutiable as veilings (par. 358, tariff act of 1913) and not as woven fabrics in the piece composed in chief value of silk (par. 318).

United States Court of Customs Appeals, May 21, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7948 (T. D. 36609).

[Affirmed.]

*Gerry & Wakefield* for appellants.

*Bert Hanson,* Assistant Attorney General (*Harry M. Farrell,* special attorney, of counsel), for the United States.

[Oral argument Feb. 16, 1917, by Mr. Wakefield and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Silk fabrics were classified by the collector of customs at the port of New York as veilings and were accordingly assessed for duty at 60 per cent ad valorem under that part of paragraph 358 of the tariff act of 1913 which reads as follows:

358. Laces, * * * veils, veilings, * * * all of the foregoing of whatever yarns, threads, or filaments composed, 60 per centum ad valorem.

To the classification and the rate of duty imposed the importers made protest on several grounds, among which was the claim that the goods were woven fabrics in the piece composed in chief value of

---

[1] T. D. 37268 (33 Treas. Dec., 27).

silk and therefore dutiable at 45 per cent ad valorem under that part of paragraph 318 of the tariff act of 1913 which provides as follows:

318. Woven fabrics, in the piece or otherwise, of which silk is the component material of chief value, * * * 45 per centum ad valorem.

The Board of General Appraisers overruled the protest and the importers appealed.

It appears from the uncontradicted testimony in the case and the samples in evidence that the goods in question are black, thin-woven silk chiffons, about 36 inches wide and from 60 to 70 yards long. They have a selvage on each side, and down the center, marking the line along which the material must be cut before using, are two closely woven stripes which serve the purpose of selvages when the goods are split. It is established that although silk fabrics of this character are purchased from the manufacturer in the double width they are never used unless split, and that by far the larger percentage of the goods is split abroad on account of the labor cost. A very small percentage, however, of double widths is imported into this country and sold to undertakers who split the fabric and use the single widths thus produced to cover the face panels of caskets.

The term "veilings" as used in the tariff act is a designation which signifies a material chiefly or exclusively used for the making of veils. A veil is a piece of cloth or other material, usually thin and light, designed to be worn over the head and face as an ornament or to protect or wholly or partly conceal the face from view. A face, whether of the living or of the dead, which is wholly or partly hidden by a thin or open woven fabric would be commonly and popularly regarded as veiled, and from that it would seem to follow that the textile material which is used to mask or screen the features resting beneath the face panels of caskets would be commonly and popularly regarded as veiling. Unless, therefore, the trade and commerce of the country has given a different meaning to the term "veilings," it would seem that the classification of the collector was correct and that the goods were dutiable as assessed.

The importers, however, contend that fabrics of the kind here involved are not within the designation of veilings as that term is understood in the trade and commerce of the country. In support of that contention several witnesses were produced before the board who testified that the merchandise was excluded from the designation "veilings." Some of the witnesses stated that the commodity was known as chiffon, and others that it was known as slide chiffon. The testimony as to the trade designation is not convincing, in view of the fact that all of these witnesses declared that the single widths to which the fabric imported may be immediately reduced by simply pulling it apart were chiffon veiling.

Albert E. Oberfelder, one of the witnesses for the importers as to commercial designation, testified on cross-examination as follows:

Q. Have you ever handled, buying or selling, this identical article but in a different finish?—A. To the best of my knowledge and belief it has always been in this same finish.

Q. You never handled anything at all similar to that in a different finish?—A. No, sir.

\*     \*     \*     \*     \*     \*     \*

Q. Not as wide a width as this?—A. I have never sold them this way, I told you; I have had them split in half and sold them as 17-inch or 18-inch chiffon veiling.

\*     \*     \*     \*     \*     \*     \*

Q. How do goods you bought as veilings, if they had the same finish and width, how do they differ from these goods?—A. They were in 18-inch width instead of double width.

Q. I thought you said you had bought some veiling in double width?—A. I have bought some veiling this way

Q. Those you bought in double width, how did they differ from these goods?—A. To the best of my knowledge they didn't differ.

Q. Then these are veilings?—A. This piece of goods is chiffon.

Q. Does that mean chiffon veiling?—A. After it is split in half it is a chiffon veiling.

Q. But as it is in this double width is it chiffon?—A. It is chiffon.

Q. And if you should take this particular piece of goods and split it in two and sell it you would sell it as a chiffon veil?—A. Yes, sir.

Henry F. Tiedeman, another witness for the importers, testified as follows:

Q. To what class of trade is this material sold?—A. This material is sold exclusively to the casket manufacturing trade.

Q. Do you know of your own personal knowledge to what use it is put by the casket trade?—A. Yes.

Q. What?—A. It is used in place of glass in the lids of caskets, in the tops of caskets. I will name it by the correct name—— (latter part of answer stricken out without objection).

Q. By what trade name have these goods been known in the wholesale trade of this country, confining your answer to the period prior to October 3, 1913, by what name was this material, Exhibit 1, known to the wholesale trade of this country?—A. Slide chiffons.

\*     \*     \*     \*     \*     \*     \*

Q. You didn't split it?—A. No.

Q. Sold it in double width?—A. Sold it in double width.

Q. You observe that it has a division line down the middle, where it can be split?—A. Yes.

Q. When it is to be used by undertakers has that splitting line any particular purpose that it serves?—A. Yes; the goods have to be split to be used, because what they call the face panel on a casket measures about 18 inches wide and this fits right over the face panel.

\*     \*     \*     \*     \*     \*     \*

Q. Have you ever known any goods that were intended to be used exclusively for the making of veils that were woven in this double width with a division line down the center?—A. Yes.

Q. That is a very common thing in the making of veilings?—A. I wouldn't say exactly common in making veilings; it is used, for instance, in making ribbons; chiffon ribbons are woven on the same principle exactly.

Q. When goods are made into veilings and have been cut by splitting a fabric of this sort this inner division line is used to form one of the selvages or edges of the finished veil, isn't it?—A. It is, but I would like to explain something about the question of veilings.

(Counsel objects to explanation, and none was made.)

The testimony of these witnesses shows conclusively, in our opinion, that the merchandise under consideration is veilings in the piece. Evidence to the effect that the double-width goods are known to the trade as slide chiffons is not inconsistent with the idea that they are a class and kind of veilings, and the statement that slide chiffons are excluded from the designation of veilings is wholly deprived of any weight which it might otherwise have by the fact that all the witnesses for the importers were agreed that the double-width goods when split were used as veiling, and that they were always split when used for the face panels of caskets, which, in our opinion, is a veiling use. To exclude the goods from the designation of veiling, it was, by reason of the facts established, incumbent on the importers to prove by a preponderance of credible testimony either that the goods were not chiefly used for veiling or that the term "veilings" in paragraph 358 has a meaning in the trade different from that commonly and popularly assigned to it. That the importers failed to do, and we must therefore find that commercial designation has not been made out and that the goods are veilings in the ordinary acceptation of the term.

The decision of the Board of General Appraisers is *affirmed*.