United States v. Max Littwitz, Inc. (No. 3337)[1]

United States Court of Customs and Patent Appeal, January 28, 1931

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell*, special attorney, of counsel), for the United States.

*Brooks & Brooks* (*Frederick W. Brooks, jr.*, of counsel) for appellee.

[1] T. D. 44588.

**342**

[Oral argument December 8, 1930, by Mr. Lawrence and Mr. Brooks, jr.]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported at the port of New York certain merchandise, hereinafter more particularly described, which was classified by the collector at 90 per centum ad valorem under the first duty provision of paragraph 1430 of the Tariff Act of 1922. The appellee protested, making various claims in his protest, but upon appeal has abandoned all of these claims except the claim made under paragraph 921 of said act, providing for manufactures of cotton. The relevant provisions of the respective paragraphs are as follows:

PAR. 1430. Laces, lace window curtains, burnt-out laces, and embroideries capable of conversion into burnt-out laces, * * *; braids, * * * made * * * on any * * * lace machine; and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles; * * * 90 per centum ad valorem; * * *

PAR. 921. * * * and all manufactures of cotton or of which cotton is the component material of chief value, not specially provided for, 40 per centum ad valorem.

The United States Customs Court sustained the protest under said paragraph 921, and the Government has appealed.

The facts in the case were stipulated, the stipulation being, so far as material, as follows:

It is hereby stipulated and agreed between counsel that items invoiced as Quality No. 166031 and 165625 "Pt. de Paris doylies 6″" and item Quality No. 166045 "Pt. de Paris sheet frames" consist of hand-made real lace articles. The articles are made by hand with bobbins directly from cotton thread into completed articles, and are not cut or made from a lace previously fabricated. Both articles are used in the condition as imported. The doilies are used on tables, dressers, etc., and the sheet frames are used to attach to bed sheets.

It is further stipulated that the sample attached hereto marked Exhibit 1 represents the items invoiced as doilies and that the sample marked Exhibit 2 represents the item invoiced as sheet frames, and that they may be received in evidence as representing the merchandise covered by the items above enumerated.

It is further stipulated that the protest may be submitted on this stipulation and 30 days allowed the plaintiff and defendant for briefs.

In addition to the stipulation, two samples of merchandise were introduced. One of these is circular in shape, with scalloped edges, and is about 6 inches in diameter. It is made entirely of lace. The other is in an oblong form, being about 21 inches in length and 4 inches in width. It has scalloped edges on the ends and one side, the other side being plain but finished with an extra stitching to prevent raveling. This sample also is composed entirely of lace.

The court below held the articles of importation to be lace articles, and, as such, to be not covered by said paragraph 1430, basing this conclusion upon *Weil Bros.* v. *United States*, T. D. 43013, 54 Treas.

Dec. 285, the cited case being a decision of the United States Customs Court rendered in a similar case on October 22, 1928.

A reference to the *Weil* case discloses that the court there based its decision in great part upon a change which had been made in the law in the enactment of the Tariff Act of 1922. The court calls attention to the fact that paragraph 358 of the Tariff Act of October 3, 1913, provided for "all lace articles, of whatever yarns, threads, or filaments composed" and that, in the enactment of the Tariff Act of 1922, this language was omitted. The court gathers from this that the omission of this language evidences, on the part of Congress, a change in the legislative intent, and cites, in support of that principle, *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022; *Fensterer & Voss* v. *United States*, 12 Ct. Cust. Appls. 105, T. D. 40029; *Lehn & Fink* v. *United States*, 12 Ct. Cust. Appls. 359, T. D. 40519, and other cases. The merchandise in the *Weil* case was "wool-lace wearing apparel," in the form of a shawl or scarf. Its further size, appearance or condition is not disclosed in the opinion. The court held that the articles in question were not laces, but were lace articles, and that they, therefore, were not dutiable under the first provision of said paragraph 1430, but under the second provision thereof.

It is undoubtedly true, as we have said in the cases above cited and commented upon by the lower court in the *Weil* case, that a change in language ordinarily must be taken as indicating a change in legislative intent. However, this rule is subject to its limitations. If the language used by Congress is so plain as to be readily understood after the changes have been made, there is no necessity for the application of this, or any other rule of construction. Rules of construction are only intended to aid the court when the legislative language needs construction. Here we are of opinion that the language used by Congress is plain and definite.

Paragraph 358 of the Tariff Act of October 3, 1913, provided for laces, all lace articles of whatever yarns, threads or filaments composed, and for all other articles or fabrics made wholly or in part of lace. Following this was a further provision for articles made in whole or in part of any of the foregoing fabrics or articles. Here was a multiplication of provisions covering the same things. Obviously, some of them were unnecessary. In the preparation of the Tariff Act of 1922, two of these provisions were omitted, retaining only, in paragraph 1430, the provision for "laces, * * * and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles." We are unable to discern how anything can be inferred from this except the fact that the Congress, in the revision of 1922, was endeavoring to simplify this provision. Such a simplification was suggested in the Summary of Tariff Information, 1921, page 1161, and was consummated by the amendment

offered by Senator McCumber, chairman of the Senate Committee on Finance, on the floor of the Senate on August 15, 1922. (Cong. Rec., 67th Cong., 2d sess., pt. 11, p. 11336.)

But, irrespective of this legislative history, we are of the opinion the language employed in paragraph 1430—namely, "laces, * * * and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles"—is amply sufficient to cover the goods of importation here.

The word "lace" is defined by Webster's New International Dictionary, 1925, as—

5. An openwork fabric of fine threads of linen, silk, cotton, etc., made with a needle, bobbins, or machinery, and usually figured; as, pillow lace, point lace, etc.; a delicate tissue of thread, much worn as an ornament of dress.

The Summary of Tariff Information, 1921, page 1156, defines lace as, "lace is ornamental needlework made by intertwining fine threads to form a pattern." We know of no lexicographer who gives any different meaning. The court below seems to have proceeded upon the theory that lace must be made by the yard and by a narrow strip created for the purposes of attachment to some article which it is designed to decorate. We do not understand this to be the definition of the term. There is no distinctive size or shape in which lace must be made. We can conceive of lace which might be made in very large sections, and almost any shape or design. All admit that the samples before us are lace, but it is said, because some of the samples are used for doilies and some for attachment to bed sheets, that, therefore, they are articles and not lace.

We think this is too narrow a construction, and is not justified by the common meaning of the term. In *Sidenberg* v. *Robertson*, 41 Fed. 763, Lacombe, Judge, charging the jury, said, after quoting Webster's definition hereinbefore given, that, in his opinion, such articles as lace collars, lace flounces, lace fichus, lace handkerchiefs, etc., were laces in the usage of common speech. In *United States* v. *Van Blankensteyn et al.*, 91 Fed. 977, certain lace tidies were involved. Townsend, district judge for the Southern District of New York, held that these articles were laces, and called attention to the fact that the importer contended lace must be made by the yard, but that it is not lace when it is made in a curved form or in a square. Again, in *Goldenberg* v. *United States*, 152 Fed. 658, certain cotton-lace collars were again claimed to be not laces, and that lace is a commodity that is bought and sold by the yard. The court held this construction to be too narrow, and followed the *Van Blanken-steyn* case. This court, in *Stiner & Son* v. *United States*, 5 Ct. Cust. Appls. 246, T. D. 34428, had before it certain lace imported in continuous lengths, made up by sewing various kinds of lace together. In that case, the importer attempted to distinguish between these

lace pieces and articles, the importer contending, as he does here, that the word "article" may be and is often employed in a more narrow sense as related to a complete article, to the exclusion of mere raw material. This court, however, concluded that the Congress in paragraph 350 of the Tariff Act of 1909, the particular statute in question in the case, did not use this term in the restricted sense claimed by the importer, but that laces might be and were, under the statute, articles.

These authorities are in point and appeal to the reason of the court. Surely it was not the Congressional intent to impose a duty of 90 per centum ad valorem upon lace which was made in a narrow strip for edging and 40 per centum upon the same lace made into a circular or oblong form. Paragraph 1430 is, as we have heretofore suggested in other cases, difficult of construction, but no necessity appears for introducing other elements of uncertainty into it by judicial construction which are not warranted by the language used in it.

Certain cases are referred to by appellee, sustaining its contention that if these articles were made into their present form in the original process of manufacture, they were never lace and, hence, can not be classified under the first provision of paragraph 1430. In support of this contention he cites the following cases: *Burlington Venetian Blind Co.* v. *United States*, 1 Ct. Cust. Appls. 374, T. D. 31456; *United States* v. *Burlington Venetian Blind Co.*, 3 Ct. Cust. Appls. 378, T. D. 32967; *United States* v. *Walter et al.*, 4 Ct. Cust. Appls. 95, T. D. 33371; *Western Blind & Screen Co.* v. *United States*, 9 Ct. Cust. Appls. 68, T. D. 39942; *United States* v. *Macy & Co.*, 7 Ct. Cust. Appls. 8, T. D. 36256. The first three cases cited relate to so-called ladder tapes, and it was held in all of these cases that certain goods called ladder tapes were not, in fact, tapes at all, and should not be classified as tapes. Manifestly this was correct. The articles neither were, nor had been, tapes at any time. The *Macy* case, above cited, related to lead and cotton clo-clo braids used for dress trimming, and the principal part of which was lead. The court held that this was not braid in its common meaning, and, hence, should not be classified as such. The *Western Blind & Screen Co.* case, above cited, also related to ladder tape. None of these cases, in our opinion, is in point here. In these cases the articles were not within the common meaning of the terms used in the various paragraphs involved. Here the articles of importation are laces in their common acceptation, and a different rule applies.

The judgment of the United States Customs Court is *reversed*.