(C. D. 1837)

ELVIC IMPORT CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 11, 1957)

*Siegel, Mandell & Davidson* (*Joshua M. Davidson* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Richard M. Kozinn* and *Murray Sklaroff*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; RAO, J., dissenting

FORD, Judge: The suit listed above challenges the classification by the collector of customs of certain imported merchandise as "Silk netting made on a lace or net machine—not bobbinet" and the assessment of duty thereon at the rate of 45 per centum ad valorem under paragraph 1529 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. Plaintiff claims said merchandise to be properly dutiable at the rate of 32½ per centum ad valorem under said paragraph 1529, as modified by the Torquay protocol to the said general agreement, 86 Treas. Dec. 121, T. D. 52739, as veils or veilings, made on any lace or net machine, wholly or in chief value of silk.

The record consists of the testimony of 5 witnesses for the plaintiff and 2 witnesses for the defendant, plus 12 illustrative exhibits by the plaintiff and 2 exhibits by the defendant. At the beginning of the trial, it was agreed between counsel that the subject merchandise was made on a lace or net machine and that it was not made on a bobbinet machine.

At the trial, counsel for the plaintiff proceeded upon the theory that the classification of the subject merchandise was governed by the rule of chief use. In view of the holding of the Court of Customs Appeals in *Tiedeman & Sons* v. *United States*, 8 Ct. Cust. Appls. 134, T. D. 37268, it would appear that counsel's theory is correct. We quote the following from the above case:

The term "veilings" as used in the tariff act is a designation which signifies a material chiefly or exclusively used for the making of veils. A veil is a piece of cloth or other material, usually thin and light, designed to be worn over the head and face as an ornament or to protect or wholly or partly conceal the face from view.

The merchandise in the *Tiedeman* case, *supra*, was described by the Court of Customs Appeals as follows:

It appears from the uncontradicted testimony in the case and the samples in evidence that the goods in question are black, thin-woven silk chiffons, about 36 inches wide and from 60 to 70 yards long. They have a selvage on each side, and down the center, marking the line along which the material must be cut before using, are two closely woven stripes which serve the purpose of selvages when the goods are split. It is established that although silk fabrics of this character are purchased from the manufacturer in the double width they are never used unless split, and that by far the larger percentage of the goods is split abroad on account of the labor cost. A very small percentage, however, of double widths is imported into this country and sold to undertakers who split the fabric and use the single widths thus produced to cover the face panels of caskets.

Also, in *Van Raalte* v. *United States,* 7 Ct. Cust. Appls. 299, T. D. 36868, the Court of Customs Appeals expressed the view that the rule of chief use was proper for determining whether the merchandise in that case was veils or silk wearing apparel. The following is quoted from the *Van Raalte* case:

Upon a review of the record we find that the articles in question are chiefly used by women as a covering for their hats or faces, or both, while riding in automobiles. They are also used in the evening by women to cover their heads and keep their hair intact when without a hat or bonnet. They are also sometimes used in the evening to throw around the shoulders of the wearer. Some of the witnesses testify that the articles are known in the trade as veils, or as automobile and chiffon veils, and also as automobile scarfs. Other witnesses testify that they are generally known in the trade as scarfs, but that they are also known as automobile veils and as chiffon veils. The testimony is therefore divided into the two classes—that which supports the claim that the articles are known in the trade under the unqualified name of veils, and that which denies that the articles are thus known in the trade, but admits that they are known there as automobile veils and as chiffon veils.

We think that upon this testimony the board was justified in sustaining the assessment of the articles as veils. Not only the trade testimony, but also the conceded use and character of the articles support this view. The articles are chiefly worn by women over their heads for the various purposes of protecting their hats, their hair, their faces, or all of these, while riding in automobiles. Articles like these, designed for such uses, fall within the common understanding of the word "veils." This statement is supported by the following definition of the word:

Standard Dictionary:

    1. A piece of cloth or other material, usually thin and light, worn over the face or head for concealment, protection or ornament. (1) A strip of cloth wound about the face to conceal it from view, as by oriental women, usually leaving the eyes visible, and not often covering only the mouth and chin. (2) In the ordinary dress of the women of modern western nations, a piece, as of gauze or crape, tied or pinned about the face or hanging from the hat or bonnet, as for protection from sun or wind.

It is claimed by the importers that fabrics used in part for the purpose of protecting the hats or shoulders of the wearers should not be called veils, but scarfs, the importers contending that the name veils properly applies only to such articles as cover and protect the face of the wearer only. There being no *eo nomine* provision for scarfs in the act, the articles would fall under this claim within the general classification of silk wearing apparel.

We think, however, that this is too narrow a definition of the term veils as used in the act and that the name is broad enough to cover such fabrics as the present ones, even though they may be used in part to cover and protect the wearer's hat as well as her face, and this conclusion is furthermore abundantly sustained by the testimony in relation to the trade usage of the term.

It should also be noted that if the term veils as generally used in the trade covers and includes the present articles, then they would respond to that term as used in the cited paragraph, even though the articles are sometimes also called scarfs. Lidenberg *v.* Robertson (41 Fed., 763); Loewenthal *v.* United States (2 Ct. Cust. Appls., 43; T. D. 31592).

In the Summary of Tariff Information, 1929, on the Tariff Act of 1922, page 2026, is found the following:

Veiling is a general commercial term covering a wide variety of articles, such as chiffon, grenadine, fancy netting (having fancy "veiling" meshes, or ornamented with a bar or border or figuring), used chiefly or exclusively for the making of veils. A veil is a particular length of veiling.

The above volume is a comprehensive summary of available tariff information and was compiled by the United States Tariff Commission for the use of the Committee on Ways and Means, in connection with an examination of the Tariff Act of 1922, for the purpose of making any readjustments in said act, where found necessary. The above quotation shows quite clearly that, in the enactment of paragraph 1529 of the Tariff Act of 1930, the Congress was advised that veiling is a general commercial term covering a wide variety of articles, used chiefly or exclusively for the making of veils, and that a veil is a particular length of veiling.

In the Summary of Tariff Information, 1948, page 20, under the heading "Comment," appears the following:

Veilings are light, fancy, open fabrics, usually of silk or rayon, and frequently ornamented with a design along the border. A veil is a particular length of veiling. Most veilings are made on the Levers lace machine. Nettings produced on the Mechlin machine are sometimes cut up and made into veils, and very fine nets made on the bobbinet machine are used for bridal veils. The principal use for veilings is in the making of veils for the ornamentation of women's hats.

Being satisfied from the foregoing authorities that the terms "veils or veilings" is a use provision, we shall now examine the record with a view to ascertaining if the plaintiff has established that the subject merchandise belongs to that class or kind of articles which were chiefly used for making veils, or for veils.

Plaintiff's witness, Kurtz, testified that he was the president of the plaintiff corporation and that he had been associated with them for 8 years; that he was familiar with all phases of the veils and veilings trade. Through this witness, illustrative exhibits 1, 2, 3, and 4 were admitted in evidence, the same being characterized as raw maline, finished maline, raw veiling, and finished veiling, respectively. This witness further testified that illustrative exhibit 3 was a sample of the merchandise described on the fourth page of the invoice as "Pure silk veiling in the grey II," which was classified as "Veilings made on a lace or net machine," and upon which duty was levied at the rate of 32½ per centum ad valorem under said paragraph 1529, as modified.

With reference to the use of the involved merchandise, the witness testified as follows:

Q. To what trade do you sell it?—A. To the millinery trade.

    *        *        *        *        *        *        *

Q. Do you know of your own knowledge what the trade to whom you sell this merchandise uses it for, in what manner?—A. I sell only to veiling houses——

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Q. Do you know how they use this?—A. I sell only to millinery supply jobbers which only sell to the millinery trade.

JUDGE LAWRENCE: He says he sells it to the millinery trade. Now you want to know if he knows to what use the millinery trade applies it.

THE WITNESS: Use it for hats, because I see very often in my customers' premises their customers. They are all hat manufacturers.

Q. And you see your merchandise there?—A. Definitely, shipped out to them.

Q. It's being used in the millinery industry?—A. Absolutely.

Q. For what purpose?—A. For trimmings on hats and for—how you say it?

Q. Face coverings?—A. Face coverings.

Plaintiff's second witness, Dubin, testified that he was president of Dubin Veilings, Inc., and that he had been in the veiling business for 42 years. Regarding the use of the subject merchandise, this witness testified as follows:

Q. Would you say that the use of maline and veiling are concurrent?—A. Yes; they are; they can be used for the same purposes.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Q. To what trade do you sell veils and malines?—A. To the millinery trade and retail trade, too.

Q. Do you know of your own knowledge what the millinery trade does with this maline or veil?—A. Yes, they trim hats, they decorate their hats, they use them as a face decoration.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Q. Do you recall from your experience whether or not you ever saw malines used in the dress industry?—A. Definitely not.

Q. In what capacity or category, therefore, would you from your experience place malines?—A. Well, by its use, which I have samples to illustrate with.

Q. You put it in what category?—A. As veiling.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

JUDGE LAWRENCE: Mr. Dubin, you seem to have had a very wide and interesting experience in your industry. Can you tell the court what the distinguishing characteristics are between nets and veilings?

THE WITNESS: Yes, sir. Netting is a strong article which will take wear and tear when worn as a dress or as a curtain. Veiling is something that is thin and very gauzey and very easy to tear.

JUDGE LAWRENCE: A more delicate fabric?

THE WITNESS: A very delicate fabric which is used in most cases as a decoration. It can even be used as a window decoration when you have fluffed it up together with a lot of colors to it. A netting is something that is used for communion veils. It is used in some cases for wedding veils. Recently it has been used a great deal for petticoats. That was the style that called for it. It is something that is strong. And malines and veilings are in one class and can't be used for the same purposes.

JUDGE LAWRENCE: Are these characteristics so well defined that any one who has an intimate knowledge of his business can easily distinguish a netting from a veiling?

THE WITNESS: Yes, sir.

\*       \*       \*       \*       \*       \*       \*

JUDGE LAWRENCE: Are you in a position to tell the court what is the chief use of material such as Exhibits 1, 2, 3, and 4? Exhibits 1 and 3 are the raw materials, 2 and 4 are stated to be the finished products.

THE WITNESS: Yes. The chief uses of Exhibits 1, 2, 3 and 4 are for millinery decorations or face veils and face coverings.

JUDGE LAWRENCE: When you speak of the use of veils or veilings for trimmings do you mean trimming hats or trimming gowns?

THE WITNESS: Trimming hats, in most cases.

JUDGE LAWRENCE: And where they are used for trimming hats, based upon your experience, observation, and knowledge, do the veils or veilings serve not only to trim the hat but also as a face covering?

THE WITNESS: Yes, as I have exhibited here.

\*       \*       \*       \*       \*       \*       \*

JUDGE LAWRENCE: And I assume that in your testimony, in describing material fit for use as veiling and trimming, you have in mind a product constructed and having the characteristics and general appearance of merchandise such as Exhibits 1, 2, 3 and 4?

THE WITNESS: Yes, sir.

Plaintiff's third witness, Korn, testified with reference to the use of the involved merchandise as follows:

JUDGE LAWRENCE: Have you followed these products like Exhibits 1, 2, 3, and 4 into consumption; you know what they are used for?

THE WITNESS: Yes, sir.

JUDGE LAWRENCE: What, in your experience of 15 years, has been the common use, the principal use in your business?

THE WITNESS: Principal use, it's used as a face covering or a millinery trimming or a hat decoration.

JUDGE LAWRENCE: When so used do they serve also to cover the face wholly or in part?

THE WITNESS: Wholly or in part, sir. It depends on the usage.

Plaintiff's fourth witness, Goldfish, testified with reference to the use of the involved merchandise as follows:

JUDGE LAWRENCE: For how many years have you dealt in products like Exhibits 1, 2, and 4?

THE WITNESS: Fifteen years. I'll be 22 years in the business.

JUDGE LAWRENCE: Based upon your experience and knowledge and observation what have you found to be the principal use of those commodities?

THE WITNESS: Ladies hats, the millinery.

JUDGE LAWRENCE: Do you mean for trimming?

THE WITNESS: For trimming and for face veils. That's the only kind of people that it's sold to.

Plaintiff's fifth witness, Warshaw, testified regarding the use of the merchandise as follows:

Q. Did you hear the testimony of the previous witness, Mr. Goldfish?—A. Yes.

Q. Would your answers be the same as the answers which he made on direct and cross-examination?—A. I believe so.

Q. That is insofar as the use of the articles are concerned, and everything?— A. That's correct.

Counsel for the parties then agreed that the answers of the witness would be the same, if the same questions were propounded to him as were propounded to Mr. Goldfish.

Defendant's witness, Stollberg, gave considerable testimony regarding the physical characteristics of malines, veils and veilings, and nets and nettings. However, with reference to the use of the merchandise before the court, the witness gave little, if any, testimony. On cross-examination, this witness was interrogated and answered as follows:

X Q. If veilings are sold to the millinery trade for use as veilings, as you have said, and maline is sold to the millinery trade, what does the millinery trade do with the malines, if you know?—A. At the present time they use them chiefly for decorating hats. They may use them as brims—veils, if you want. I have seen the times they have constructed entire hats of malines—turbans of malines. It is an article that the millinery trade has used for a great many years, ever since I can remember.

X Q. You heard the testimony this morning, did you, sir?—A. Yes.

X Q. Did you see the model this morning?—A. Yes.

X Q. She modeled the maline veil, so called. Would you say that that was substantially the use to which the model modeled those articles and the testimony related to this morning?—A. I would say at the present moment that is exactly what the millinery trade is doing with malines, yes.

\* \* \* \* \* \* \*

X Q. That's perfectly all right. Exhibit 2 is a piece of maline and Exhibit 4 is a piece of veiling. Now, I asked you, to the best of your knowledge aren't they used for veiling purposes or veil purposes in the millinery or in the undertaking industry?—A. In the millinery industry, yes, in the undertaking industry, no, they are not used for the same purpose whatsoever. And the amount of veilings used by the undertakers is nil.

\* \* \* \* \* \* \*

JUDGE LAWRENCE: Let me make it clear. Can Exhibits 1 and 3 when finished as represented by Exhibits 2 and 4 be used for making veilings or veils?

THE WITNESS: Yes, and so could Exhibit A, or any sort of netting.

JUDGE LAWRENCE: I mean Exhibits 2 and 4 which I hold in my hand purport to be the finished product of Exhibits 1 and 3 before you. My question now is are they both, 2 and 4, adaptable for conversion into veils or veiling?

THE WITNESS: Well, they are for veils but not for veiling.

JUDGE LAWRENCE: They are for veils?

THE WITNESS: Yes.

JUDGE LAWRENCE: Based upon your long experience what would you say has been the chief use of merchandise like Exhibits 1 and 3 when finished?

THE WITNESS: Over the years I would say the chief use has been for the construction of millinery. By that I mean entire hats have been made.

\*       \*       \*       \*       \*       \*       \*

JUDGE LAWRENCE: Is it not true that nettings have a use to which veilings would not ordinarily be put?

THE WITNESS: Yes, indeed.

JUDGE LAWRENCE: And veilings have a use to which you would not ordinarily put nettings, is that right?

THE WITNESS: There I can't be as emphatic because they have used nettings for veils. They have used all kinds of nettings for veils, your Honor. I have seen bobbinet nets used for veils. I heard a statement made here that you cannot sew on a veil or on a maline. That is not so. They have embroidered on malines, thousands of veils.

JUDGE LAWRENCE: Based upon your long experience what would you say from your observation and knowledge has been the principal use of merchandise like Exhibit 2?

THE WITNESS: I would say its principal use has been for the manufacture of millinery.

JUDGE LAWRENCE: And I ask you the same question with respect to Exhibit 4. Based upon your long experience what has been the primary use of that article?

THE WITNESS: The principal use for that article has been as a veil in order to decorate the female face to be worn with a hat.

Referring to the use of the involved merchandise, defendant's second witness, Skolnick, testified as follows:

JUDGE LAWRENCE: Mr. Skolnick, in your experience what would you say has been the primary use of netting?

THE WITNESS: Are you referring to this maline?

JUDGE LAWRENCE: I am referring to netting.

THE WITNESS: Primarily netting has been used to make fingertip veils.

JUDGE LAWRENCE: Netting?

THE WITNESS: At weddings, that's right. I am referring to the bridal illusion.

\*       \*       \*       \*       \*       \*       \*

JUDGE LAWRENCE: And what do you say has been the chief use of malines?

THE WITNESS: The chief use of malines has been retail, to different department stores, which they sell it as tulle to make those little fingertip veils.

It will be seen from the above that the testimony of defendant's two witnesses with reference to the use of the involved merchandise is not in any respect materially different from that given by plaintiff's witnesses, and, in many respects, defendant's testimony corroborates that of the plaintiff.

As heretofore indicated, defendant's witnesses gave certain testimony regarding the different characteristics between malines, veils and veilings, and nets and nettings. However, such testimony cannot be held to have a controlling effect in classifying the instant merchandise since, as we have held, its classification is controlled by its chief use.

In the *Van Raalte* case, *supra*, it will be observed that the Court of Customs Appeals quoted the definition of a veil, as found in the Standard Dictionary, and, in the light of this definition and the record in that case, which record closely approximates the record in the instant case, held the merchandise there involved to be veils. It is also worthy of note that the merchandise in the *Van Raalte* case was used by women as a covering for their hats or faces, or both; that it was also used by women in the evening to cover their heads and keep their hair intact when without a hat or bonnet; that it was also used sometimes in the evening to throw around the shoulders of the wearer; that it was chiefly worn by women over their head for the various purposes of protecting their hats, their hair, their faces, or all of these; and that it was also sometimes called "scarfs." The chief use of the merchandise in the *Van Raalte* case closely approaches the chief use of the merchandise in the instant case.

The "millinery trade" is a trade in which people make and deal in hats and bonnets. Hats and bonnets are worn on the head as ornaments, to a great extent, or to protect or wholly or partly conceal the face from view. Therefore, the fact that some of the witnesses in this case testified that the involved merchandise was sold to and used by the millinery trade would not be inconsistent with their testimony that the chief use of the subject merchandise was a "veil" use.

Based upon a consideration of the entire record, it is our view that the plaintiff has established the chief use of the involved merchandise to be as veils or veilings. We, therefore, hold all the merchandise covered by this suit, which was classified as "Silk netting made on a lace or net machine—not bobbinet" and assessed with duty at 45 per centum ad valorem under paragraph 1529, as modified, *supra*, to be properly dutiable at the rate of 32½ per centum ad valorem under said paragraph 1529, as modified by the Torquay protocol, *supra*, as alleged by the plaintiff.

To the extent indicated, the specified claim in this suit is sustained; in all other respects and as to all other merchandise, all the claims are overruled. Judgment will be rendered accordingly.

#### DISSENTING OPINION

RAO, Judge: As I view the issues involved in this case, I find myself in disagreement with the conclusion reached by the majority. Initially, I agree that the principle expressed in *Tiedeman & Sons* v. *United States*, 8 Ct. Cust. Appls. 134, T. D. 37268, is here controlling. That case holds that the term "veilings" is a use designation, signifying a material chiefly or exclusively used for the making of veils, a veil being therein defined as a "piece of cloth or other material, usually

thin and light, designed to be worn over the head and face as an ornament or to protect or wholly or partly conceal the face from view."

This being so, the burden rested with the plaintiff of establishing that the subject material, to wit, malines, was chiefly or exclusively used in the making of veils. It is my belief that the evidence does not preponderate in favor of the affirmative of that proposition and that the contention of the defendant, expressed as follows, has merit:

* * * although malines are used in the millinery trade, in many instances, in the same manner as veilings, there are uses for it in other trades, and in the millinery industry itself, which are not veiling uses, and that these uses are substantial enough to prevent classification of malines as veils or veilings.

I am not convinced that evidence of chief use of malines in the millinery trade, if indeed that fact may be said to have been established by the entire record, is by any means equivalent to proof of chief use for the making of veils, and it is the latter, not the former, which plaintiff was required to show.

Taking the excerpts from the testimony quoted in the majority opinion, I find that plaintiff's witness, Kurtz, president of the importing corporation, admitted that the merchandise at bar is used in the millinery trade "For trimmings on hats and for * * * face coverings." Plaintiff's witness, Dubin, in the veiling business for 42 years, had this to say with reference to the use of malines by the millinery trade, "Yes, they trim hats, they decorate their hats, they use them as a face decoration. * * * The chief uses of Exhibits 1, 2, 3 and 4 are for millinery decorations or face veils and face coverings." Plaintiff's witness, Korn, engaged in buying and selling millinery trimmings and veilings, gave as the principal use of products like illustrative exhibits 1, 2, 3, and 4, "as a face covering or a millinery trimming or a hat decoration." Finally, there is the statement of the witness, Goldfish, engaged in the millinery trimming and veiling business, to the effect that merchandise like said exhibits is used for trimming and for face veils.

The distinction between use as veils on the one hand, and as hat trimmings or decorations on the other, derives from the testimony of plaintiff's own witnesses. Since no one of them could assert categorically that malines were chiefly used for the making of veils, it is apparent that the industry did not regard the two uses as one. Therefore, it was incumbent upon plaintiff to show, which it did not do, which use predominated. Accordingly, I am of opinion that plaintiff's claim for classification of the merchandise at bar as veils or veilings ought to be overruled.