BURLINGTON VENETIAN BLIND CO. *v.* UNITED STATES (No. 268).[1]

1. COTTON LADDER TAPE FOR USE ON VENETIAN BLINDS.

The doctrine of *noscitur a sociis* can not be made to include under paragraph 332, tariff act of 1909, so-called cotton ladder tape employed as a device to raise or lower venetian blinds, and the Congress having apparently with intention assembled in paragraph 349 of that act, for dutiable purposes, amongst other articles, tape made of cotton, will be presumed to have meant cotton ladder tape should be dutiable under the last-named paragraph and it is so dutiable.

2. QUESTION RESERVED.

If the importation in its present form had been shown to be the product of the loom alone, that it had been subjected to no other process, a different question might have been presented; but the testimony as to this being inconclusive in kind the point is reserved.

United States Court of Customs Appeals, March 27, 1911.

APPEAL from decision of the Board of United States General Appraisers, G. A. 7021 (T. D. 30614).

[Affirmed.]

*Brown & Gerry* for appellant.

*D. Frank Lloyd,* Assistant Attorney General (*Thomas J. Doherty* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

BARBER, Judge, delivered the opinion of the court:

The importation in this case consists of so-called ladder tapes made of cotton. These tapes are used in the manufacture of venetian blinds and are part of the mechanical device by which the slats of the blinds are raised or lowered. The merchandise was assessed for duty as a cotton tape at the rate of 60 per cent ad valorem, under paragraph 349 of the tariff act of August 5, 1909, and was claimed by the importers to be dutiable under paragraph 332 of the same act. These respective paragraphs are as follows:

349. Laces, lace window curtains, and all other lace articles; handkerchiefs, napkins, wearing apparel, and all other articles made wholly or in part of lace or laces, or in imitation of lace; nets, nettings, veils, veilings, neck rufflings, ruchings, tuckings, flutings, quillings, embroideries, trimmings, braids, featherstitch braids,

edgings, insertings, flouncings, galloons, gorings, bands, bandings, belts, beltings, bindings, cords, ornaments, ribbons, tapes, webs, and webbings; wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy letter, initial, or monogram, or otherwise, or tamboured, appliquéed, or scalloped, by hand or machinery, for any purpose, or from which threads have been drawn, cut, or punched to produce openwork, ornamented or embroidered in any manner herein described, in any part thereof, however small; hemstitched or tucked flouncings or skirtings; all of the foregoing, composed wholly or in chief value of cotton, flax, or other vegetable fiber, or of cotton, flax, or other vegetable fiber and india rubber, or of cotton, flax, or other vegetable fiber, india rubber, and metal, and not elsewhere specially provided for in this section, sixty per centum ad valorem: *Provided,* That no article composed wholly or in chief value of one or more of the materials or goods specified in this paragraph, shall pay a less rate of duty than the highest rate imposed by this section upon any of the materials or goods of which the same is composed.  *  *  *

332. All articles made from cotton cloth, whether finished or unfinished, and all manufactures of cotton, or of which cotton is the component material of chief value, not specially provided for in this section, forty-five per centum ad valorem.

The board, on appeal, overruled the protest and sustained the assessment.

An inspection of the samples before us shows that these ladder tapes are composed of two pieces of fabric of indeterminate length, each about one and one-half inches in width, which are connected at regular distances by pieces of a fabric of much lighter weight, each about two and one-half inches long and about one-fourth of an inch in width. This connection and arrangement give the completed article a ladder-like appearance which probably is the reason why the word "ladder" is used in describing it, although there is no evidence as to that fact.

The only evidence before the board was the official samples and the testimony given by Mr. Crane, the secretary of the appellants, who was introduced as a witness in their behalf.   He testified in substance that the official samples correctly represented the importations, that they were imported in the condition shown thereby, that they were solely used for sustaining the wooden slats known in the trade as venetian blinds, that they were woven on a loom by machinery, that so far as he knew nothing else had been done to them, that they had not been embroidered or appliquéed, but were the straight products of the loom, that they were called in trade a cotton ladder tape and were made of cotton.   There was no other evidence tending to show how many or what processes were employed in producing the articles, and the source of Mr. Crane's knowledge, if he had knowledge of the methods of production, did not appear.

There was no evidence of commercial designation.

From the opinion of the board it appears that the importers' contention before it was that these tapes were not *ejusdem generis* with the other goods included in the context of paragraph 349, and therefore, under the doctrine of *noscitur a sociis*, were not subject to the duty in that paragraph provided.

The appellants in the presentation of their case in this court rely wholly upon the application of the doctrine of *noscitur a sociis* to exclude the importation from the provisions of paragraph 349, and in that connection urge that this paragraph relates entirely to articles of personal or household use and ornamental in character. They argue that the articles covered by this paragraph are divisible into the five following classes, viz: (1) Laces and lace articles; (2) articles in part of real or imitation lace; (3) various fabrics and trimmings used on wearing apparel; (4) articles embroidered, appliquéed, scalloped, or otherwise ornamented; (5) hemstitched or tucked flouncings or skirtings; and claim the third division in which the word "tapes" is found is devoted wholly to articles used on wearing apparel, and consequently that a tape used solely for mechanical purposes, as in the case at bar, is excluded therefrom and becomes dutiable under paragraph 332. We think this argument is fallacious.

The third clause of the paragraph, in addition to "tapes," refers amongst other things to cords, nets, nettings, webs, webbings, bands, and bandings, some if not all of which articles are, within common knowledge, quite frequently used for purposes other than in connection with wearing apparel.

There is another cogent reason why the doctrine of *noscitur a sociis* can not be successfully invoked here, which is fully set forth in the opinion of the board. From an examination of the tariff acts of 1897 and 1909 it appears that paragraph 339 of the act of 1897, which is the paragraph corresponding to paragraph 349 of the present act, did not specify beltings, bindings, cords, ribbons, tapes, webs, and webbings. All of these articles when made of cotton were provided for under paragraph 320 of the earlier act at a rate of duty less than that provided in said paragraph 339 for the goods mentioned therein, and paragraph 330 of the act of 1909, which corresponds with paragraph 320 of the earlier act, now contains no reference to said articles except to belting for machinery, nor are we able to find any paragraph in the act of 1909 which relates to the articles so apparently transferred, other than said paragraph 349.

All this leads us to the conclusion that the Congress deliberately transferred tapes when made of cotton from a paragraph containing a lower rate of duty to one containing a higher rate, and there would seem to be no reason why effect should not be given to the logical results of such an act. Stern et al *v.* United States (105 Fed. Rep., 937); Hiller et al *v.* United States (106 Fed. Rep. 73).

As we have already said, the only claim made by the appellants is that by the application of the doctrine of *noscitur a sociis* the articles in controversy are excluded from the provisions of paragraph 349. No claim is urged here that the importation is not tape, and by invoking the defense mentioned the appellants impliedly, at least, admit it to

be tape made of cotton within the common meaning of that word as used in the paragraph and have claimed or shown no commercial designation.

We therefore content ourselves with deciding the precise question raised by appellants' counsel and discussed in their brief.

We are not called upon to determine what the rights of the appellants might have been had the claim been advanced, supported by sufficient evidence, that the article was not in fact tape. The word "tape" ordinarily signifies a narrow piece of woven fabric, and it may not always be clear what articles come fairly within that designation. Obviously if the importations are made from tapes previously manufactured they would, under the first proviso of paragraph 349 when read in connection with paragraph 332, be subject to the same rate of duty as that imposed by the collector. If, however, the importation in its present form is the product of the loom alone and has been subjected to no other processes a different question might be presented. The testimony upon this point is unsatisfactory and does not furnish a basis for a reversal of the finding of the board. We refer to it, however, in order that it may not be understood that such question is concluded by this decision.

The judgment of the Board of General Appraisers is *affirmed*.

MONTGOMERY, Presiding Judge, and HUNT, SMITH, and DE VRIES, Judges, concur.