UNITED STATES *v.* BURLINGTON VENETIAN BLIND CO. (No. 924).[1]

1. COMMERCIAL DESIGNATION.
    Commercial designation must be shown by proof of a trade understanding, and the use of the term sought to be established must be shown to be definite, uniform, and general, not partial, local, or personal.

2. COTTON "LADDER TAPES" MADE OF YARN.
    The importation was not "tapes" as properly and actually known, nor "webs or webbings," but an article produced by a loom, designed to hold slats and used in the manufacture and repair of venetian blinds. It was dutiable as a manufacture of cotton, not specially provided for, under paragraph 332, tariff act of 1909.

United States Court of Customs Appeals, November 14, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7360 (T. D. 32503).

[Affirmed.]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Thomas J. Doherty,* special attorney, on the brief), for the United States.

*Brown & Gerry* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise involved in the several protests in this case is referred to in the record as a "cotton ladder tape." It is agreed to

[1] Reported in T. D. 32967 (23 Treas. Dec., 425).

be identical in every particular with that before this court in Burlington Venetian Blind Co. *v.* United States (1 Ct. Cust. Appls., 374; T. D. 31456). Here, as there, the merchandise was assessed for duty as "tapes" under the provisions of paragraph 349 of the tariff act of 1909.

In the first case the importers' contention was that the so-called tapes were not *ejusdem generis* with the other merchandise mentioned in paragraph 349, and therefore under the doctrine of *noscitur a sociis* were not subject to the duty therein provided.

In the case now before the court the importers' contention is that the merchandise is not "tapes" within the ordinary meaning of the applicable part of said paragraph, which reads as follows:

349. * * * Nets, * * * tapes, webs, and webbings; * * * all the foregoing, composed wholly or in chief value of cotton, flax, or other vegetable fiber, or of cotton, flax, or other vegetable fiber and india rubber, or of cotton, flax, or other vegetable fiber, india rubber, and metal, and not elsewhere specially provided for in this section, sixty per centum ad valorem: * * *

but is dutiable under paragraph 332 of the same act as a manufacture of cotton not specially provided for.

The Board of General Appraisers sustained the importers' contention and the Government brings the case here for review, alleging (1) that the merchandise in suit is a tape as commonly understood; (2) that it is commercially known as tape; (3) that it is composed wholly of one of the materials specified in said paragraph 349, to wit, webs or webbings, and is therefore subject to the first proviso of said paragraph, which is—

That no article composed wholly or in chief value of one or more of the materials or goods specified in this paragraph, shall pay a less rate of duty than the highest rate imposed by this section upon any of the materials or goods of which the same is composed: * * *.

It appears from the record that this merchandise is produced in the following manner:

This ladder tape, so called, is made by the use of eight different warps, which are drawn in the loom in such a way that when they come in connection with the shuttles they are divided into four distinct pieces; the weft is then introduced into the warp and forms the four webs, namely, the top and bottom broad webs and the two inner narrow webs, which are called straps. It will of course be obvious that, in order to bind the inner straps into the broad webs at regular intervals, some special process is required, and this is done by the use of a Jacquard machine, which is placed on the top of the loom and lifts the shafts through which the warp ends are drawn into the exact position required to form the ladder web. * * * The loom in which these goods, the ladder tapes, are made is similar to an ordinary web loom, with the addition of either Jacquard machine or dobby, to regulate the movements of the shafts controlling the warp ends for the straps or inner webs. For the manufacture of a woven ladder tape eight warps are required, namely, two for each of the two broad or outer webs and two each for the straps or inner narrow webs. All these four webs are woven at one and the same time with the aid of four shuttles containing the weft, these shuttles being placed in the

batten or lathe one above the other. The top and bottom webs, being the broad webs, are woven in the same way as ordinary webs, but the shafts which control the warps of the inner webs or straps are so manipulated by the Jacquard machine, or by the dobby, whichever is used, that they admit of the weft contained in the middle shuttles being woven in, and so form the narrow straps for a certain length, after which these warps are alternately lifted or dropped into the top or bottom broad webs, as required, and so form the ladder web. After this the small connecting threads are cut by hand, at a very small cost, and the ladder tape is then fit for use on the blind.

We first consider whether the merchandise is tapes as commonly understood and for assistance in such consideration refer to the lexicographers. The material portion of the definition of the word "tape" as found in the Century Dictionary is as follows:

2. A narrow strip of linen or of cotton, white or dyed, of different colors, used as string for tying up papers, etc., or sewed to articles of apparel, to keep them in position, give strength, etc. 3. A narrow, flexible band of any strong fabric, rotating on pulleys, which presses and guides the movement of sheets in a printing machine or paper-folding machine.

In Webster's Dictionary:

A narrow fillet or band; a narrow piece of woven fabric used for strings and the like.

Standard Dictionary:

A narrow, stout strip of woven fabric, forming a flat cord; much used for tying together various parts of apparel, or binding different objects in parcels; also in printing presses and paper-folding machines, for guiding the movement of the paper. 2. A flat braid or strip of paper or thin metal, as used in a tapeline. 9. A band or fillet of linen.

Worcester's Dictionary:

A narrow fillet or band, usually of cotton or linen, and used for tying or binding.

We think, as did the board, that no extended discussion is necessary to demonstrate that the above definitions do not cover the merchandise in question, which in its finished condition is two strips of woven fabric, each about $1\frac{1}{2}$ inches in width, united at regular intervals by means of other much lighter woven strips of fabric about $2\frac{1}{2}$ inches in length and three-eighths of an inch in width, and which are designed for the purpose of holding slats, and so far as this case is concerned are used in the manufacture and repairing of venetian blinds. Neither do we think that any common understanding of the meaning of the word "tapes" includes the same.

The article as it comes from the loom is completed, except that the small connecting threads are cut by hand, which enables the finished product to assume the ladder-like form. The respective fabrics which constitute it have never assumed the form of tapes or webs; if when wholly separated they would be such is not material, because the separation has not been made and is not designed to be made. The entity of tapes within the common meaning of the word has never existed and is not contemplated. Indeed it is

not believable, so far as this case shows, that "tapes," as such, would be manufactured in this manner.

However, the Government contends that the article is commercially known as tape. The evidence upon which it relies to support this claim is comprised of the statement of one witness that in the trade it is called a cotton-ladder tape, and the further fact that in the papers in the case it is usually if not invariably so designated.

The Board of General Appraisers was of opinion that this evidence did not warrant the finding that the merchandise was commercially known as tapes, in which we concur.

At the hearing before the board, the Government asked one witness by what name the merchandise was known in the trade. The importers objected to the witness being permitted to answer the question on the ground that he was not shown to be qualified to give evidence in that regard; the board so held and excluded the evidence. Upon this exclusion the Government alleges error here.

It appears from the record that this witness was engaged in the manufacture of rolling doors, rolling shutters, and venetian blinds; that his trade extended over the entire United States; that therein he had occasion to furnish his customers with this ladder tape for the purpose of repairing venetian blinds which he had manufactured; that he did not sell or furnish it to repair any make of venetian blinds other than his own; that he bought only of the manufacturer from whom he imported it; that he sold to no customer unless such customer first furnished him the name of the party who was going to use it; that he sold to no jobber who purposed to keep a stock of such merchandise on hand; that he did not handle merchandise precisely like that involved in this case; that he did not think anyone kept a stock in this country except the manufacturer of venetian blinds.

Other than from the foregoing evidence it did not appear but that merchandise like that at bar was bought and sold in wholesale quantities, nor did it appear that other dealers restricted the sales of similar merchandise in the manner testified to by the witness.

Under these circumstances and in view of the rule that commercial designation must be shown by proof of the trade understanding, we think the board very properly excluded the evidence of this witness.

The settled rule is that commercial designation must be shown to be definite, uniform, and general, and not partial, local, or personal (United States *v.* Kwong Yuen Shing, 1 Ct. Cust. Appls., 14; T. D. 30773), and we think the excluded evidence could not have warranted a finding of a definite, uniform, and general commercial usage in view of the limitations of the witness's opportunity for knowledge. The most that the excluded evidence can be said to legitimately tend to prove would be a commercial designation which was only partial and personal.

As to the claim of the Government that the merchandise is "webs and webbings" under paragraph 349, that issue does not appear to have been made before the board, and without exhaustively stating the reasons therefor it is sufficient for the purposes of this case to say that we think the record does not show the merchandise to be webs and webbings within the commonly understood meaning of the words as used in said paragraph. While the term "web" in its broadest ordinary signification might be urged to mean any textile fabric woven in a loom, yet we do not think in view of the context it has that broad significance as used in the paragraph, or that either of the words "webs" or "webbings" was designed to include an article produced by the loom in the manner shown in this case and which presents the appearance and is devoted to the uses-shown here. It is not necessary to attempt to specifically define the meaning of the words "webs and webbings." Perhaps in some instances an article known as web or webbing might also be designated as tape; but for the purposes of this case we find no warrant to say that while the merchandise is not tapes it is nevertheless a web or webbing or composed thereof within the meaning of the paragraph.

The judgment of the Board of General Appraisers is *affirmed.*