UNITED STATES *v*. WALTER *et al.* (No. 1058).[1]

1. CONSTRUCTION.

In tariff statutes words describing merchandise are to be taken as used in their commercial sense, but the common and the commercial meanings are presumed to be the same. If a difference in meaning is attempted to be shown, the party seeking to show a difference has the burden of proof.

2. TAPES AND LADDER TAPES.

To bring these articles within the commercial designation of "tapes" it would be necessary to show that they are known as such. This is not here shown. On the contrary, the evidence discloses that, instead of being known commercially as tapes, they are commercially known as ladder tapes. Tapes and ladder tapes are not the same thing.

United States Court of Customs Appeals, April 22, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7396 (T. D. 32871). [Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

*Brown & Gerry* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise here is known as ladder tapes, and is identical with that before this court in Burlington Venetian Blind Co. *v*.

[1] Reported in T. D. 33371 (24 Treas. Dec., 594).

United States (1 Ct. Cust. Appls., 374; T. D. 31456), and United States *v.* Burlington Venetian Blind Co. (3 Ct. Cust. Appls., 378; T. D. 32967).

In the earlier of these cases the issue as to the classification of the merchandise was between the provisions of paragraph 349 and paragraph 332 of the tariff act of 1909. The importer claimed that the articles were dutiable as manufactures of cotton under paragraph 332; that under the doctrine of *noscitur a sociis* it should be held that paragraph 349 related entirely to articles of personal or household use, ornamental in character; and that the ladder tapes, not being *ejusdem generis* with the merchandise named in the paragraph, should therefore be excluded from classification thereunder. It was not claimed that the articles were not in fact tapes, nor was there any claim of commercial designation. The merchandise had been assessed under paragraph 349, and the action of the board sustaining the collector's assessment was affirmed.

In the later case the same paragraphs were involved as in the former and the claim relied upon by the importer was that the merchandise was not in fact tapes within the meaning of that word as used in the paragraph. Although it was claimed by the Government that its evidence of commercial designation brought the articles within the meaning of the word "tapes" as used in the paragraph, this contention was not upheld and the judgment of the Board of General Appraisers ordering its assessment under paragraph 332, as a manufacture of cotton not specially provided for, was affirmed.

In the case at bar the evidence in the other cases has been imported into the record and it also contains the evidence of one additional witness whose testimony seems to be wholly directed to an effort to show that these articles are commercially known as "ladder tapes."

The Government here contends in substance that if it shall be found that the trade knows and refers to this merchandise under the name of "ladder tapes" it is thereby brought within the meaning of the word "tapes" as used in paragraph 349.

We assume for the purposes of this decision that the trade and commerce dealing with this commodity designate it as "ladder tapes."

It is established that the use of these ladder tapes is confined to the manufacture and repairing of Venetian blinds, to which they are attached, and by means of which the blind slats are turned, or raised and lowered.

It may here be stated that a ladder tape consists of two strips of woven fabric of indefinite length, about 1½ inches wide, connected at regular distances by lighter woven fabrics about 2½ inches long and ⅜ inch wide, produced by the loom from cotton threads of suitable sizes. After coming from the loom certain small connecting threads are cut by hand, resulting in the product assuming the ladder-like shape which its name indicates.

For further information as to the production of the merchandise and discussion of the questions raised therein reference is made to the decisions above mentioned.

The collector assessed the merchandise in this case as tapes under said paragraph 349, while the importer here claims that it is dutiable as a manufacture of cotton not otherwise provided for under paragraph 332. The board sustained the protest.

The learned counsel for the Government strenuously contends that having established that the merchandise is known commercially as "ladder tapes" it is thereby embraced within the commercial meaning of the word "tapes" as used in paragraph 349.

Nothing has occurred to change our opinion, as expressed in the later of the cited cases, that these articles are not in fact tapes within the common meaning of the word.

While if the respective parts had been produced separately and had become a separate entity before being combined, as in the ladder tapes, they might perhaps with propriety be said to be manufactures of tapes, the truth is that there has never in fact existed the entity, tapes, in these articles. As first produced from the cotton threads they appear substantially as we find them here. To bring these articles within the commercial designation of tapes we think it must be shown that they are commercially known as such; but it is not so shown. On the contrary, the evidence plainly shows that instead of being commercially known as "*tapes*" they are known commercially as "*ladder tapes*," which is not the same thing. To illustrate: The tomato in earlier days, if not now, was frequently referred to in common speech as a "love apple." Suppose a paragraph of the tariff law had imposed a duty upon "apples" without further descriptive language. Would it be urged or ought it to be held that if the tomato was shown to be designated in commerce as a "love apple" that tomatoes by reason thereof were placed within the commercial meaning of the word "apples" as it might be used in the supposed paragraph without any evidence whatever as to the commercial meaning of the word "apples" itself?

We are unable to glean from the authorities cited by the Government or to find upon principle that such a supposed classification could or ought to be upheld.

One of the elementary principles in the construction of tariff statutes is that words describing merchandise are used in their commercial sense, but the common and commercial meanings are presumed to be the same unless it is otherwise shown, and upon him who claims a different commercial sense devolves the burden of making good his contention. To do that it is incumbent to show that the given word or term has a definite, uniform, and general meaning among those who are wholesale dealers therein which is

different from its ordinary meaning. United States *v.* Kwong Yuen Shing (1 Ct. Cust. Appls., 14; T. D. 30773); Acker *v.* United States (1 Ct. Cust. Appls., 328; T. D. 31431).

As pointed out in the decision of the board in this case, no effort has been made to conform to this rule, the Government contenting itself by showing that .the merchandise is commercially known as "ladder tapes" without showing that the word "tapes" itself is used in commerce as referring to the merchandise in question, or that the commercial meaning of the word "tapes" is other than its ordinary meaning.

The judgment of the Board of General Appraisers is *affirmed.*