WESTERN BLIND & SCREEN CO. *v.* UNITED STATES (No. 1920).[1]

LADDER TAPE—MATERIAL—MANUFACTURE.

Merchandise known as "ladder tape," woven as an entirety of cotton, used in the manufacture of Venetian blinds, identical with that in United States *v.* Burlington Venetian Blind Co. (3 Ct. Cust. Appls., 378; T. D. 32967), consisting of two longitudinal fast-edge woven pieces about 1½ inches wide, connected at intervals of about 2 inches by similar transverse pieces about three-eighths of an inch wide and 2½ inches long, are dutiable as manufactures of cotton (par. 266, tariff act of 1913), and not as "fabrics with fast edges * * *" (par. 262). While the tapes, if produced and imported as separate entities, might be dutiable under paragraph 262, the fact that they have never had an existence separate from that of the finished article is sufficient to exclude them from the operation of this paragraph.

United States Court of Customs Appeals, February 25, 1919.

APPEAL from Board of United States General Appraisers, G. A. 8162 (T. D. 37614).
[Affirmed.]

*Frank L. Lawrence* (*Thomas M. Lane* of counsel) for appellants.

*Bert Hanson*, Assistant Attorney General (*Harry M. Farrell*, special attorney, of counsel), for the United States.

[Oral argument Jan. 16, 1919, by Mr. Lane and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

This case involves a classification of cotton ladder tapes under the tariff act of 1913. They are identical with the merchandise considered in this court in Burlington Venetian Blind Co. *v.* United States (1 Ct. Cust. Appls., 374; T. D. 31456); United States *v.* Burlington Venetian Blind Co. (3 Ct. Cust. Appls., 378; T. D. 32967); and United States *v.* Walter et al. (4 Ct. Cust. Appls., 95; T. D. 33371).

In all these cases the question was presented whether they were classifiable as cotton tapes or as manufactures of cotton under the tariff act of 1909. In the first case, as the issue was made, we affirmed the judgment of the Board of General Appraisers sustaining the collector's classification as tape, but we did not hold it to be such in fact.

The second case involved, among other things, the question as to whether the merchandise was tape in fact. On the record we held it was not, and proof that such was its commercial designation

---

[1] T. D. 39942 (36 Treas. Dec., 211).

failing, we affirmed the judgment of the Board of General Appraisers that it was a manufacture of cotton.

The main difference between the second case and the third was that in the latter the Government offered additional evidence tending to establish the commercial designation of the merchandise as "ladder tapes." Assuming such commercial designation had been shown, we held, upon the record, that did not bring the article within the meaning of the word "tapes," as used in the paragraph.

The tariff act of 1913 does not contain an applicable provision for tapes, as did the act of 1909, but paragraph 262 provides for "bandings, belts, belting, bindings, bone casings, cords, tassels, cords and tassels, garters, tire fabric, or fabric suitable for use in pneumatic tires, suspenders and braces, and fabrics with fast edges not exceeding twelve inches in width," made of cotton, and the question here is whether these ladder tapes are dutiable under the specific provision just quoted as "fabrics with fast edges not exceeding twelve inches in width" or as manufactures of cotton under paragraph 266 of the same act.

The collector assessed the merchandise under the latter provision, and the Board of General Appraisers has sustained the assessment.

The contentions of the respective parties have been ably and exhaustively presented.

That the facts as to the production and use of these ladder tapes may be easy of reference we insert the stipulation of counsel touching the subject:

It is hereby stipulated by and between the parties hereto that the merchandise covered by the above specified protests consists of so-called ladder tapes composed of cotton; that they are identical with the merchandise covered by the decision of the Court of Customs Appeals in the case of United States *v.* Burlington Venetian Blind Co. (3 Ct. Cust. Appls., 378; T. D. 32967), are imported on spools containing continuous lengths of the material of about 72 yards, and are used in the manufacture of Venetian blinds; and that they are produced in the same manner as the merchandise covered by said decision, which is as follows:

This ladder tape, so called, is made by the use of eight different warps, which are drawn in the loom in such a way that when they come in contact with the shuttles they are divided into four distinct pieces; the weft is then introduced into the warp and forms the four webs, namely, the top and bottom broad webs and the two inner narrow webs, which are called straps. It will, of course, be obvious that, in order to bind the inner straps into the broad webs at regular intervals, some special process is required, and this is done by the use of a Jacquard machine, which is placed on the top of the loom and lifts the shafts through which the warp ends are drawn into the exact position required to form the ladder web. The loom in which these goods, the ladder tapes, are made is similar to an ordinary web loom, with the addition of either Jacquard machine or dobby, to regulate the movements of the shafts controlling the warp ends for the straps or inner narrow webs. For the manufacture of a woven ladder tape eight warps are required, namely, four for each of the two broad or outer webs, and two each for the straps or inner narrow webs. All these four webs are woven at one and the same time with the aid of four shuttles containing the weft, these shuttles being placed in the batten or lathe one above the other. The top and

bottom webs, being the broad webs, are woven in the same way as ordinary webs; but the shafts which control the warps of the inner webs or straps are so manipulated by the Jacquard machine or by the dobby, whichever is used, that they admit of the weft contained in the middle shuttles being woven in, and so form the narrow straps for a certain length, after which these warps are alternately lifted or dropped into the top, or bottom broad webs, as required, and so form the ladder web. After this the small connecting threads are cut by hand at a very small cost and the ladder tape is then fit for use on the blind.

The provision in paragraph 262 for fabrics with fast edges, etc., is new law.

The stipulation states that the importations here are on spools containing continuous lengths of material of about 72 yards. A sample of the merchandise is before us.

From the stipulation and the sample it is therefore apparent that a spool contains two woven pieces having fast edges, each about 1½ inches wide and 72 yards long, connected at regular intervals, about 2 inches apart, by other woven pieces about three-eighths of an inch wide and 2½ inches long. These connecting pieces have fast edges, are much thinner than the long ones, and, as they are placed about 2 inches apart, it is obvious that each spool would contain some 1,300 of these short pieces.

In other words, there is upon each spool an article about 72 yards long which, presumably, from its ladder-like form and the tape-like appearance of its different parts, has come to be called a "ladder tape."

We think it may at once be conceded that the side pieces alone, if separately produced, disregarding entirely the connecting pieces, would be within the statutory provision for fabrics with fast edges not exceeding 12 inches in width.

In United States v. Walter, supra, it was in substance said of these ladder tapes that if the respective parts had been separately woven, and then fastened together to produce the article as imported, it might have been regarded as a manufacture of tapes, but that the fact was the entity of the parts as tapes had never existed.

Now, if we assume that both the long and the short pieces, above described, might be, if separately produced, regarded as fabrics within the meaning of paragraph 262, their subsequent combination to produce ladder tapes would seem to be a manufacture of such fabrics, but the fact here is, that their entity as such separate fabrics has never existed. In their first appearance they were fastened together, and they have ever since so remained.

The manufacturer, for purposes of trade, economy in fabrication, or otherwise, has seen fit to produce, not the separate pieces of which the article is composed, and then unite them, but the united pieces as an entirety, and then finish it by hand. This entirety is designed, and by its construction set apart for a single use, namely, as one of the materials for the manufacture of Venetian blinds.

The importers have cited cases tending to support the view that the term "fabrics" is not limited to those the use of which has not been definitely fixed, that processes subsequent to weaving do not remove an article from the general class of fabrics, and that the question is not what an article resembles but how it is produced. But we conclude that the shape, appearance, name, and use of this article here, as well as the differing statutory provisions under consideration in the cited cases, distinguish them from the one now before us.

We do not think these ladder tapes come within the common meaning of the word "fabrics" as used in the paragraph, nor deem it necessary to further discuss that question.

As the original component material of the merchandise before us is cotton, and as the weaving and subsequent hand manipulation are manufacturing processes, these ladder tapes, for the purposes of this case, should be regarded as a manufacture of cotton, and as such they were properly classified and assessed.

The judgment of the Board of General Appraisers is *affirmed*.