L. Bamberger & Co. *v.* United States (No. 3113)[1]

United States Court of Customs Appeals, February 16, 1929

*Allan R. Brown* for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell* and *Oscar Igstaedter*, special attorneys, of counsel), for the United States.

[Oral argument December 5, 1928, by Mr. Brown and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, and BARBER (retired), Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal involves the proper classification of articles used as ornaments in a lady's boudoir, which are referred to as ornamental perfume burners, and which are built upon and around a spiral, rubber-covered wire which forms the base and main stem. To the top portion of the spiral wire are attached shells, representing leaves and petals of a rose. In the center of the flower is a small electric-light bulb. A small cup is cemented upon the top of the bulb for the purpose of holding perfume. Yellow petals are used in the construction of one burner to simulate a yellow rose and pink petals are used in the construction of the other burner to simulate a pink rose. The green-covered wire represents the stem of the flower and a light in the center of the flower represents the stamens and pistils. The heat from the light evaporates the perfume. The shells are thin and the light shines through them giving color effect in the room.

The testimony in the case shows that the articles are made in the following manner: The shells are first cleaned and pierced with holes by drilling and wires are set in them to be attached to the wire stem. The green shells representing the leaves of the rose are first attached by gutta-percha strips being wound around the wires which hold the leaves. The colored petals are then attached in the same manner. The so-called leaves and petals are completely finished before they are attached to the stem. Accompanying and attached to each article is a sufficient amount of insulated wire for connecting the lamp with the light socket in the room. It is stated in the testimony that the bulb does not give sufficient light for use as a lighting fixture and that its sole purpose is for the heating of the perfume and for

giving color effect to the shells. The shells composing the leaves and petals are admitted to be of more value than the remainder of the article.

The articles in question were classified by the collector under paragraph 1419 of the Tariff Act of 1922 at 60 per centum ad valorem in accordance with the return of the appraiser, which return was in the following language:

The merchandise in question consists of perfume burners composed in chief value of artificial shell flowers, and was returned for duty as artificial flowers at 60 per centum under paragraph 1419, act of 1922.

The importer protested the classification of the merchandise, claiming the same to be dutiable under paragraph 1440 at 35 per centum ad valorem or paragraph 229 at 20 per centum ad valorem. The court below overruled the protest and the importer has appealed to this court and here urges the sole claim that the goods are dutiable under paragraph 1440 as manufactures of shell.

The pertinent portions of the two paragraphs of the Tariff Act of 1922 follow:

PAR. 1419. * * * artificial or ornamental fruits, vegetables, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for, 60 per centum ad valorem; * * * boas, boutonnieres, wreaths, and all articles not specially provided for, composed wholly or in chief value of any of the feathers, flowers, leaves, or other material herein mentioned, 60 per centum ad valorem: * * *.

PAR. 1440. Manufactures of * * * shell, * * * or of which these substances or any of them is the component material of chief value, not specially provided for; * * * 35 per centum ad valorem.

The importer, appellant, argues that in *Altman & Co.* v. *United States*, 15 Ct. Cust. Appls. 318, T. D. 42488, this court held that the same articles as are now at bar were not artificial flowers but that in that case it was stipulated they were in chief value of artificial flowers and that the court followed the stipulation; that the present case is not controlled by the Altman case in so far as there is no stipulation in this case; and that the court is not required to rely upon the sample before it but is bound by the evidence in the case which, they contend, shows that the articles are not composed in chief value of artificial flowers inasmuch as it is shown that the perfume burners are manufactured directly from shells and that there never were any artificial flowers as separate entities out of which the perfume burners were made. *United States* v. *Macy & Co.*, 7 Ct. Cust. Appls. 8, T. D. 36256; *Western Blind & Screen Co.* v. *United States*, 9 Ct. Cust. Appls. 68, T. D. 39942; *Angel & Co.* v. *United States*, 15 Ct. Cust. Appls. 19, T. D. 42132; Abstract 196, 50 Treas. Dec. 594; and T. D. 41273, G. A. 9076, 48 Treas. Dec. 605, are relied upon by appellant as supporting its position.

In the *Macy* case, *supra*, the court had under consideration the dutiable status of so-called clo-clo braids, consisting of pieces of lead molded upon a flax cord and covered with tubular cotton braid, the lead constituting the component material of chief value. The court held that the articles were dutiable as manufactures in chief value of lead under the provisions of paragraph 167 of the Tariff Act of 1913, rather than as articles in part of braid under the provisions of paragraph 358 of said act, for the reason that an article to be made partly of braids must be made in part of an article that has had a separate existence as braid. In that case the court said:

There remains, then, for determination the precise issue as to whether it can be said that the article is composed in part of braid. In order to declare that a thing is made in part of braid, it must appear that braid, as that word is commonly understood, has been brought into existence and is one of the materials used in making the article under examination.

\*         \*         \*         \*         \*         \*         \*

The fact that the merchandise before us is referred to as a "clo-clo braid" does not, in view of the record, bring that article within the common meaning of the word "braid" as is in effect conceded by the Government, and we are unable to conclude that the entity braid within the common meaning of the term has ever existed or is found in the merchandise under consideration here. The nearest approach thereto is its covering, and this is the basis of the Government's claim as to component material. The appearance of the finished article shows that this covering was braided or woven upon the cord after the lead had been molded thereon. The covering, then, never had the entity of braid; it never had an independent, separate existence as an article or material; it never was designed to be used for trimming, for ornamentation, or for binding; it was never either a flat band or tape, nor was it a tubular tape or braid. Its first appearance was in the completed article before us, and it never had any other existence.

\*         \*         \*         \*         \*         \*         \*

Now, we think it is clear that the quoted part of paragraph 358 requires that an article to be made in whole or in part of braids thereunder must be made in whole or in part of something which has already attained a status or condition entitling it to be regarded as a braid in and of itself. But neither the covering to the article before us nor any other part of it has ever attained that condition or status; neither has it attained the status or condition in which it could be used, nor is it designed to be used, for any of the purposes to which braids are commonly devoted, namely, for binding, for trimming, or for ornamentation.

In *The Western Bline & Screen Co.* case, *supra*, involving the classification of so-called ladder tapes made of cotton and used in the manufacture of Venetian blinds, the court held that the articles were not manufactures of tape for the reason that the tape as such had no separate identity before becoming a part of the article, and there used the following language:

In *United States* v. *Walter*, 4 Ct. Cust. Appls. 95, it was in substance said of these ladder tapes that if the respective parts had been separately woven, and then fastened together to produce the article as imported, it might have been regarded as a manufacture of tapes, but that the fact was the entity of the parts as tapes had never existed.

Now, if we assume that both the long and the short pieces, above described, might be, if separately produced, regarded as fabrics within the meaning of paragraph 262, their subsequent combination to produce ladder tapes would seem to be a manufacture of such fabrics, but the fact here is that their entity as such separate fabrics has never existed. In their first appearance they were fastened together, and they have ever since so remained.

In *Angel & Co.* v. *United States, supra,* this court held that paper extraction thimbles or filters were manufactures of pulp rather than manufactures of paper, since they were directly made of pulp and not made from paper, and we said:

If the filters had been manufactured of paper, they would have to be regarded as manufactures of paper, but as the evidence shows without contradiction that they are made of pulp and not of paper, we must hold that the classification by the collector of the thimbles under paragraph 1313 was incorrect.

Paragraph 1303 provides in explicit terms for manufactures of pulp not specially provided for, and as the goods are manufactures of pulp and not otherwise specially provided for, the importation must be held to be dutiable at 25 per centum ad valorem under that paragraph.

In Abstract 196, *supra,* the Board of General Appraisers (now the United States Customs Court) held that handkerchiefs having an edge applied by knotting and looping a thread to produce a triangle, known as Armenian lace, were not dutiable as articles in part of lace because it appeared that the lace edging did not have a separate and distinct existence at the time it became a part of the handkerchiefs.

The same court in T. D. 41273, *supra,* decided that Wilton rugs with fringe which had been made by assembling threads or yarn and interweaving them with threads or yarn of the rug were not dutiable as articles in part of fringes because the fringe on the rug was never a separate entity.

The Government devotes very little space in its brief and very little time in argument to the question of the application of the five cases last above cited, except to say that they are not applicable, and suggests that in the *Macy* case, *supra,* the braids were not braids before being placed on the article and were not braids after they were put on the article. We can not agree with this view nor have we been able to differentiate the principle involved in these cases and the principle involved in the case at bar, and we think they are controlling.

It is not contended that the articles in question are artificial flowers. They are perfume burners and are more than artificial flowers, since they have parts wholly unrelated to ornamentation, such as the wire and socket connections. It is the Government's position that they are in chief value of artificial flowers.

The Government also argues, however, that if they are not dutiable as articles in chief value of artificial flowers under paragraph 1419, they are dutiable under the paragraph as articles "in chief value of flowers and parts thereof," because the record shows that all of the shells

imitate petals or leaves and that the articles were completed by putting them together.

· With this contention we agree. The latter part of the paragraph reads, "boas, boutonnieres, wreaths, and all articles not specially provided for, composed wholly or *in chief value of any of the feathers, flowers, leaves, or other material herein mentioned.*" We think this provision is broad enough to include the importation at bar. If "flowers, leaves, or other material herein mentioned" is read in connection with "flowers, and stems or parts thereof," then the leaves and petals at bar which existed in their finished form before being manufactured into the article must be taken into consideration.

It might be suggested that the word "or" would require that the materials constituting chief value must be materials other than leaves, and that since the chief value is in both leaves and petals, the burners can not be classified under the latter portion of the paragraph. We think the language used will not admit of such a narrow construction. Obviously, when the whole paragraph is considered, Congress intended that if the article was in chief value of leaves and petals of artificial flowers, or of either of them, it should fall within the paragraph.

. In *United States* v. *Gavin,* 7 Ct. Cust. Appls. 292, T. D. 36804, the court had under consideration paragraph 333 of the Tariff Act of 1913, which provided for "beads and spangles of all kinds   *   *   * and other articles   *   *   *, composed wholly or in chief value of beads or spangles   *   *   *," and the court held:

The issue as presented is not satisfied by the determination whether the word "or" shall be read as "and," for that conclusion leaves us confronted with the result, if strictly followed, that only such articles are dutiable under the provision as are ornamented with both beads *and* spangles. No reason is apparent from the language of the paragraph why Congress should have intended either such limited application. Congress provided in the first part of the paragraph that "beads *and* spangles" should bear the same rate of duty (35 per centum ad valorem), and in the latter part that all articles in chief value of beads should bear the same rate of duty as all articles in chief value of spangles (50 per centum ad valorem). Therein the statute conclusively evidences the purpose to treat beads and spangles, whether as such or as parts of ornaments, alike for dutiable purposes. Having thus enacted, no purpose is apparent from the act or disclosed by the record that Congress intended a different rate should be applied upon an article wherein beads and spangles together constituted the chief value of the article. On the contrary, this conceded uniformity of accorded rates upon each, beads and spangles, in whatever condition found, argues a purpose of Congress to treat them alike or as one subject for dutiable purposes. In the presence of this expressed purpose of Congress, and in the view that both conjunctions "and" and "or" read in any other sense would not only defeat the purpose of Congress manifested by the words of the paragraph but lead to an absurd result, the court is of the opinion that the phrase "beads or spangles," as used in paragraph 333, was so used as a collective subject of legislation, embracing all articles composed of either or both of its elements.

We hold, therefore, that the importation does not consist of artificial flowers, nor of articles composed wholly or in chief value of artificial flowers, but that the same, upon this record, is dutiable under paragraph 1419 for the reasons indicated and that the protest of appellant was properly overruled by the court below, and the judgment of the United States Customs Court is *affirmed*.