SWEDISH VENETIAN BLINDS Co. *v.* UNITED STATES (No. 3966)[1]

---

[1] T. D. 48291.

United States Court of Customs and Patent Appeals, April 20, 1936

*Sharretts & Hillis (Edward P. Sharretts* of counsel) for appellant.
*Joseph R. Jackson,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney, of counsel), for the United States.

[Oral argument April 7, 1936, by Mr. Sharretts and Mr. FitzGibbon]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, overruling a protest by appellant against the classification by the collector of certain merchandise, imported at the port of New York, under paragraph 923 of the Tariff Act of 1930 as manufactures of cotton, not specially provided for, and dutiable at the rate of 40 per centum ad valorem. The protest claimed the merchandise to be dutiable under paragraph 912 of said tariff act at the rate of 35 per centum ad valorem.

The said competing paragraphs, insofar as they are here pertinent, read as follows:

PAR. 923. All manufactures, wholly or in chief value of cotton, not specially provided for, 40 per centum ad valorem.

PAR. 912. Fabrics, with fast edges, not exceeding twelve inches in width, and articles made therefrom; * * * wholly or in chief value of cotton * * * 35 per centum ad valorem * * *.

The merchandise consists of ladder tape or ladder webbing, used in the manufacture of Venetian blinds. It is produced wholly from cotton and is woven on four looms at one time by means of a Jacquard attachment so that the finished ladder tape is made in one operation from cotton yarns. It is imported in lengths of seventy-two yards. The article consists of two longitudinal fast edge woven pieces about one and one-half inches wide, connected at intervals of about two inches by similar transverse pieces about three-eighths of an inch wide and two and one-half inches long. The trial court summarized the testimony respecting the method of producing the article as follows:

* * * That several tiers of shuttles are arranged, one above the other; that each tier of shuttles is capable of weaving an independent separate fabric; that they proceed to weave four separate fabrics for a distance of about two

inches; that after two inches of four separate strips of fabric are woven, an attachment, known as the "Jacquard attachment", brings the tiers of shuttles weaving the narrow strips into the same plane with one of the tiers of shuttles weaving the wider fabrics, and causes a small section of the narrower fabrics to be woven into the surface of the wider fabric; that this operation is repeated every two inches; and that while this interweaving is going on, the warp and weft threads not in use are carried along as shown in Illustrative Exhibit D, and are later cut off in order to complete the article.

Interrogated by Judge Kincheloe as to whether the four different pieces of material were ever separate entities, or whether they were woven together at one time, the same witness replied:

> Well, they were never a separate entity in this respect, they have never had a separate existence apart from the ladder web; but, on the other hand, there are times during the weaving when all those four tapes are being made separately, and if they were to take a cutting off the loom, we should get four distinct unconnected pieces of tape (R. 8, 9).

The trial court held that the involved ladder tape could not be considered as an article made or manufactured from "Fabrics, with fast edges, not exceeding twelve inches in width," in view of the fact that the article was woven on the loom from yarn as an entirety in one operation for a particular use, and therefore overruled the protest and entered judgment accordingly. From such judgment this appeal was taken.

Merchandise of this identical character has been before this court under previous tariff laws in the following cases: *Burlington Venetian Blind Co.* v. *United States*, 1 Ct. Cust. Appls. 374, T. D. 31456; *United States* v. *Burlington Venetian Blind Co.*, 3 Ct. Cust. Appls. 378, T. D. 32967; *United States* v. *Walter et al.*, 4 Ct. Cust. Appls. 95, T. D. 33371; and *Western Blind & Screen Co.* v. *United States*, 9 Ct. Cust. Appls. 68, T. D. 39942 [T. D. 37942].

The case of *Burlington Venetian Blind Co.* v. *United States*, *supra*, arose under the tariff act of 1909. The merchandise was referred to in the opinion as being "composed of two pieces of fabric" so connected together as to form the article involved. Said tariff act of 1909 did not contain any provision similar to paragraph 912 of the Tariff Act of 1930 here involved, and it is unnecessary to consider further this case.

The case of *United States* v. *Burlington Venetian Blind Co.*, *supra*, also arose under the tariff act of 1909, and it was there held that the so-called tapes were not tapes within the meaning of the word "tapes" as used in paragraph 349 of said act. In its opinion the court said:

> The article as it comes from the loom is completed, except that the small connecting threads are cut by hand, which enables the finished product to assume the ladder-like form. The respective fabrics which constitute it have never assumed the form of tapes or webs; if when wholly separated they would be such is not material, because the separation has not been made and is not designed to be made. The entity of tapes within the common meaning of the word has never existed and is not contemplated. Indeed it is not believable, so far as this case shows, that "tapes", as such, would be manufactured in this manner.

The case of *United States* v. *Walter et al., supra,* also arose under the tariff act of 1909. The only question there involved was that of commercial designation. However the court in its opinion stated:

While if the respective parts had been produced separately and had become a separate entity before being combined, as in the ladder tapes, they might perhaps with propriety be said to be manufactures of tapes, the truth is that there has never in fact existed the entity, tapes, in these articles. * * *

In that case the court referred to the article involved as consisting of two strips of woven fabric connected together.

The case of *Western Blind & Screen Co.* v. *United States, supra,* arose under the tariff act of 1913. Said act did not contain an *eo nomine* provision for cotton "tapes", but paragraph 262 of said act did contain a provision for "fabrics with fast edges not exceeding twelve inches in width." There was no provision for articles made from such fabrics. The ladder tapes there involved were classified under this provision and were claimed by the importer to be dutiable as manufactures of cotton. This claim was sustained. The opinion in said last cited case states:

In United States *v.* Walter, supra, it was in substance said of these ladder tapes that if the respective parts had been separately woven, and then fastened together to produce the article as imported, it might have been regarded as a manufacture of tapes, but that the fact was the entity of the parts as tapes had never existed.

Now, if we assume that both the long and the short pieces, above described, might be, if separately produced, regarded as fabrics within the meaning of paragraph 262, their subsequent combination to produce ladder tapes would seem to be a manufacture of such fabrics, but the fact here is that their entity as such separate fabrics has never existed. In their first appearance they were fastened together, and they have ever since so remained.

The manufacturer, for purposes of trade, economy in fabrication or otherwise, has seen fit to produce, not the separate pieces of which the article is composed, and then unite them, but the united pieces as an entirety, and then finish it by hand. This entirety is designed, and by its construction set apart for a single use, namely, as one of the materials for the manufacture of Venetian blinds.

The Tariff Act of 1922, paragraph 913, contained a provision for "Fabrics with fast edges not exceeding twelve inches in width", and in addition contained the provision, "and articles made therefrom", said provisions being identical with those here under consideration in paragraph 912 of the Tariff Act of 1930. However, no case involving merchandise of the character here under consideration arose in this court under the provisions of said Tariff Act of 1922.

Thus, while merchandise identical with that here involved has been before this court four times, this is the first case respecting such merchandise involving the construction of the language "Fabrics, with fast edges, not exceeding twelve inches in width, and articles made therefrom."

However, a very similar provision, in principle, was before us in the case of *Curtis & Von Bernuth Mfg. Co.* v. *United States,* 22 C. C. P. A.

(Customs) 651, T. D. 47633. This case arose under the Tariff Act of 1930, paragraph 1111 of which contains a provision for "Blankets, and similar articles (including carriage and automobile robes and steamer rugs) made of blanketing, as units or in the piece, finished or unfinished * * *." The merchandise there involved consisted of "steamer rugs" and "automobile robes." They were classified by the collector under the above-quoted provision of paragraph 1111. They were claimed by the importer to be dutiable as manufactures of wool under paragraph 1120. The method of manufacture of the article there involved is described in the opinion as follows:

On the trial below it was established that the involved articles were manufactured directly from yarns; that they were woven in lengths of about 50 to 60 yards; that the loom on which they were woven had an attachment, which, after the cloth had been woven to a length of seventy-two inches, automatically omitted the weft threads for a fixed distance of about eight to ten inches; that when the weaving process was finished, as stated by counsel for appellant in their brief, "the result was a series of individual steamer rugs [the automobile robes were produced in the same manner] separated from each other every seventy-two inches by eight or ten inches of unfilled warp threads"; that after the weaving process, the articles were removed from the loom, "washed, teazled, fulled, and finished", and the individual articles separated from each other by cutting through the middle of the space from which the weft threads had been omitted; that, thereafter, the unfilled warp threads at the ends of the individual articles were rolled together and made into fringes; that, with the exception of the attachment, which automatically omitted the filling threads every seventy-two inches, and the possible exception of width, the machinery, including the weaving process, by which the involved articles were made was precisely the same as is used in the manufacture of blanketing; and that the quality of the finished product depends upon the grade of wool used.

We sustained the claim of the importer that the involved articles were not made of blanketing. We quote further from the opinion:

We think it is clear from what has been said that the involved articles were *not made of blanketing.* If they have been imported in running lengths, each individual article being fixed with certainty, we dare say that no one would suggest that they were not dutiable as individual articles. See *United States* v. *M. H. Rogers, Inc.,* 18 C. C. P. A. (Customs) 271, T. D. 44448.

It is our view that said last-cited case, in principle, controls the issue before us, and that the involved merchandise should not be held to have been made from "Fabrics, with fast edges, not exceeding twelve inches in length."

We repeat in substance what was said by this court in the case of *Western Blind & Screen Co.* v. *United States, supra.* If we assume that both the long and short pieces, composing the article here involved, might be, if separately produced, regarded as fabrics within the meaning of said paragraph 912, their subsequent combination to produce ladder tapes would seem to be articles made from such fabrics, but the fact is that their entity as such fabrics never had existed.

In their first appearance they were fastened together, and they have ever since so remained.

It is our view that the material out of which the involved articles were made never had a separate entity as fabrics with fast edges not exceeding twelve inches in width, and hence such articles were not made therefrom. This view is also confirmed by the decision in the case of *United States* v. *Macy & Co.*, 7 Ct. Cust. Appls. 8, T. D. 36256. There was involved in that case the question of whether the articles before the court were made of braid, and hence classifiable under paragraph 358 of the tariff act of 1913. The opinion states:

Now, we think it is clear that the quoted part of paragraph 358 requires that an article to be made in whole or in part of braids thereunder must be made in whole or in part of something which has already attained a status or condition entitling it to be regarded as a braid in and of itself. But neither the covering to the article before us nor any other part of it has ever attained that condition or status; neither has it attained the status or condition in which it could be used, nor is it designed to be used, for any of the purposes to which braids are commonly devoted, namely, for binding, for trimming, or for ornamentation.

Appellant invokes the legislative history respecting said paragraph 912 in support of its contention that the involved articles are made from fabrics with fast edges not exceeding twelve inches in width. With respect to this question we find nothing in the provisions of said paragraph 912 that is ambiguous, warranting us in resorting to the legislative history of the paragraph for the purpose of its construction. Moreover, we find nothing in the legislative history of the paragraph relied on by appellant to warrant its contention, assuming such legislative history could properly be resorted to.

The Summary of Tariff Information, 1921, p. 882, and the Summary of Tariff Information, 1929, p. 1582, prepared by the United States Tariff Commission when Congress was considering the legislation which finally became, respectively, the Tariff Act of 1922 and the Tariff Act of 1930, mention cartridge belts as being made from fabrics with fast edges not exceeding twelve inches in width, and appellant offered in evidence a cartridge belt made directly from the loom, as the ladder tapes here involved were made. It is unnecessary for us here to decide whether cartridge belts made directly from the loom should be classified under said paragraph 912 of the Tariff Act of 1930. Cartridge belts are not specifically named in said paragraph 912, and the fact that the tariff commission named cartridge belts as being made from fabrics with fast edges not exceeding twelve inches in length is of no importance. Obviously, cartridge belts could be made from such fabrics, and the fact that appellant made such cartridge belts directly from the loom is wholly immaterial to the issue before us.

Appellant assigns as error the action of the trial court in excluding certain exhibits, including cartridge belts. We find no error in such

exclusion, as we do not see wherein such exhibits were material to the issue before the trial court.

We find no error in the decision of the trial court that the involved articles were not made from fabrics with fast edges not exceeding twelve inches in length, and therefore the judgment appealed from is *affirmed*.

### DISSENTING OPINION

BLAND, Judge: I must respectfully dissent from the conclusion reached by the majority.

The rule that a thing may not, in a tariff sense, be regarded as having been "made" of another thing unless the components had a separate existence, while well settled in this court, often leads to classification results which are anomalous, and I certainly would not apply the rule where the facts upon which it is based are not clear.

It is my view that each of the components of the ladder tape which, when put together in the loom operation, form the finished article, had a separate existence at one time in the process of making, and the mere fact that a way has been devised of·weaving the two components at the same time and then weaving them together instead of sewing them together should not be held to justify a holding that the finished article is not "made" from fabrics with fast edges of the kind provided for in the paragraph.