ROPA CO. *v.* UNITED STATES (No. 4204) [1]

[1] C. A. D. 59

United States Court of Customs and Patent Appeals, May 29, 1939.

Brooks & Brooks (*Ernest F. A. Place* of counsel) for appellant.
*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon* and *Richard H. Welsh*, of counsel), for the United States.

[Oral argument April 13, 1939, by Mr. Place and Mr. FitzGibbon]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This appeal involves the proper dutiable classification of certain suspender cord ends, more particularly described hereinafter, imported under the Tariff Act of 1930. They were classified by the Collector of Customs under paragraph 1529 (a) and assessed with a duty of 90 per centum ad valorem, and were claimed in appellant's protest to be dutiable in the same paragraph under subparagraph (c) as elastic fabrics at 60 per centum ad valorem. Other claims were made in the protest which were not pressed in the lower court or here.

The material portions of paragraph 1529 follow:

PAR. 1529 (a)  *  *  *  *braids*, loom woven and ornamented in the process of weaving, or made by hand, or on a lace, knitting, or braiding machine;  *  *  * *and fabrics and articles wholly or in part thereof*, finished or unfinished (except materials and articles provided for in paragraph 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), or in subparagraph (b) of this paragraph), by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, 90 per centum ad valorem.  *  *  * [Italics ours.]

*    *    *    *    *    *    *

(c) Corsets, girdle-corsets, step-in-corsets, brassieres, bandeaux-brassieres; corsets, girdle-corsets, or step-in-corsets, attached to brassieres or bandeaux-brassieres; all similar body-supporting garments; all the foregoing, of whatever material composed, finished or unfinished, and all wearing apparel or articles to which any of the foregoing is attached, 60 per centum ad valorem; all the foregoing composed in whole or in part of elastic fabric, 75 per centum ad valorem. No wearing apparel or article so attached to such body-supporting garment shall be subject to a less rate of duty than if imported separately. *Elastic fabrics of whatever material composed, knit, woven, or braided, in part of india rubber, 60 per centum ad valorem.* [Italics ours.]

The United States Customs Court, Second Division, relying upon its decision in *New York Merchandise Co., Inc.* v. *United States*, T. D. 49171, 72 Treas. Dec. 342, held that it was not the intent of Congress to exempt subparagraph (c) relating to braided articles such as suspender cord ends from the operation and invasion of para-

graph 1529 (a). It overruled appellant's protest without affirming the action of the collector and from the judgment of the trial court appellant has here appealed.

The importer in this court argues in substance that it was not the intent of Congress that the language used in subparagraph (a) of paragraph 1529 should authorize the invasion of subparagraph (c) and argues that the case of *Madame Adele* v. *United States*, 23 C. C. P. A. (Customs) 305, T. D. 48176, relied upon by the Government, and the decision relied upon by the trial court are not in point. Other contentions are made and other authorities are cited by the appellant, but in view of our conclusion it is not thought necessary to discuss them.

The Government discusses many authorities but asserts that the involved merchandise falls squarely under the ruling of the *Madame Adele* case, *supra*, in which this court held in substance that by reason of certain paragraphs and subparagraphs of the Tariff Act of 1930 being exempted from the invading power of subparagraph (a) of paragraph 1529, and for other reasons, it was the intent of Congress to require that merchandise aptly described in said subparagraph (a) be classified thereunder rather than under subparagraph (c) even though described therein.

The merchandise involved consists of suspender cord ends which are light-colored, elastic cords, approximately two feet long, which contain loops at each end for fastening over the buttons of the trousers, which loops are made by turning the ends of the cord backward and fastening the same with a round, nonremovable clasp about three-quarter inch long and one-fifth inch in diameter, which is in the form of a hollow cylinder and the material of which appears to be celluloid or a similar substance. According to the record, the portion of the cord other than the clasp is made in the following manner: Strands of india rubber and textile yarn are fed into a braiding machine which braids a cord into lengths of 60 yards and upwards which cord at regular intervals is somewhat flattened on two sides. This material is then fed into another machine of the same character which braids a shell or covering of silk or artificial silk yarns around the cord which was formed by the first machine. The material so braided and formed is then cut into desired lengths and the ends are looped in the manner described. They are used solely as parts of men's suspenders. The exhibits are elastic; the elasticity being imparted to them by the india rubber and to some extent by the braided textile material.

The argument was presented here that if knitted, woven, or braided elastic fabrics in part of india rubber were excluded from subparagraph (c) and drawn into subparagraph (a), the enactment of subparagraph (c) was a futility and that such intended result could not properly be ascribed to Congress. This interesting and novel ques-

tion, as we see it, is not before us for decision. Before it would be necessary to decide or discuss this issue it must first be determined that the imported article is an elastic fabric. Appellant argues for a broad construction of the term "elastic fabric" and points to the fact that the term "fabric" is frequently applied broadly to completed articles which have been fabricated, such as buildings, and that it should not be restricted to a narrow meaning which excludes finished articles which are made or composed wholly or in part of fabrics.

For reasons which we will presently express, we are of the opinion that appellant's contentions in this respect are not in harmony with the interpretation which should be given to subparagraph (c). While it is true that in Webster's New International Dictionary "fabric" has been defined as a building, framework, structure, or contrivance, this is not the definition which is applicable in the case of textile fabrics when used in tariff statutes. In the same authority we find the following:

5. Anything manufactured; in modern use, only, cloth that is woven or made from fibers, either vegetable or animal; manufactured cloth; a textile fabric; as silks, or other *fabrics*.

We are of the opinion that the term "elastic fabrics" referred to in subparagraph (c) has reference to materials out of which articles composed wholly or in part of fabrics might be manufactured, and in this conclusion we think we are supported by the context of paragraph 1529 as a whole and subparagraph (c) in particular. It will be noted that paragraph 1529 as a whole is essentially one devoted to fabrics and articles connected therewith. Subparagraph (c) enumerates certain finished and unfinished articles to be worn on the person, all of which have a textile characteristic. After specifically naming the articles in (c) and applying a duty thereto of 60 per centum, we find the following: "all the foregoing composed in whole or in part of elastic fabric, 75 per centum ad valorem." Obviously, "elastic fabric" in the last-quoted provision refers to material which goes into the finished article. The provision is that if the article is composed of elastic fabric it shall bear a duty of 75 per centum. Then we find the particular provision which is here directly in controversy: "Elastic fabrics of whatever material composed, knit, woven, or braided, in part of india rubber, 60 per centum ad valorem." It is fair to assume that Congress used the term "elastic fabric" in the same sense in each provision and that it was the intent of Congress to make a lower rate of duty on the *material* elastic fabric than it did on finished articles composed of elastic fabrics. It must be admitted that this merchandise is a finished article composed in part of an elastic material. It is not necessary here to determine whether or not the 60-yard lengths of material, before being cut and finally finished into suspender cord ends, should be regarded as elastic fabrics.

46

In holding that "elastic fabrics" as used in the controverted provision should not be held to include finished articles like those at bar we are supported, we think, by the following authorities, although they do not pertain to the particular paragraph involved or to any other paragraph of the Tariff Act of 1930: *United States* v. *Milbank, Leaman & Co.*, 14 Ct. Cust. Appls. 166, T. D. 41693; *Caplan & Co.* v. *United States*, 14 Ct. Cust. Appls. 247, T. D. 41875; and *Western Blind & Screen Co.* v. *United States*, 9 Ct. Cust. Appls. 68, T. D. 39942.

There is no contention here that the merchandise is not described in subparagraph (a) of paragraph 1529 under the phrase "fabrics and articles wholly or in part" of braid.

For the reasons heretofore assigned, we think the trial court properly overruled appellant's protest and its judgment is *affirmed*.